JAMES CLARK *v.* THE MAYOR AND CITY COUN-
CIL OF BALTIMORE.

*Decided June 25th, 1868.*

Military bounties. Ordinance of Mayor, etc., of Baltimore.
Courts ; duty of. Statutes ; construction ; retroactive.

C. enlisted in Baltimore City in a regiment of United States colored troops,—a regiment raised in the city and credited as a part of the quota of the city,—under the call of the President, dated the 1st of February, 1864, for five hundred thousand men; he was mustered into service on the 11th of August, 1863, and was honorably discharged in May, 1866. The City of Baltimore passed an Ordinance, entitled, "An Ordinance to provide for the defense of the city, by encouraging the enlistment of volunteers in the several regiments now in the field, or now being raised by order of the President of the United States, under the late call for five hundred thousand men, by paying a bounty to such volunteers as have enlisted or may enlist in the City of Baltimore, to make up the quota apportioned to said city." Approved 16th of February, 1864. *Held:*

That C., having enlisted and been mustered into the service of the United States, prior to the call of the President for five hundred thousand men, is not entitled to the bounty of $200, provided for by the Ordinance.                                             pp. 283, 286

With regard to the policy of an Ordinance of a Municipal Corporation, whether expedient or inexpedient, just or unjust, courts have nothing to do. If passed by a corporation within the scope of its delegated powers, it is valid and must be so declared. (*a*)          p. 283

Statutes and ordinances are to be construed according to the intent of the Legislature; and to ascertain this intent, the words employed are to be first considered, and to be interpreted according to their plain, ordinary and natural import, having regard for their order and grammatical arrangement. If the words are clear, precise and unam-

---

(*a*) See *Alexander v. Worthington*, 5 Md. 472, note (*d*), for note on the Construction of Statutes.

biguous, the Legislature must be understood to mean what it has plainly expressed. (b)                                                    p. 283'
   In case of doubt, the preamble may be looked to. (c)         p. 285
   No statute will be construed to act retrospectively unless such a purpose be plainly expressed. (d)                           p. 283

**278**     *Appeal from the Court of Common Pleas.

This was an action of *assumpsit* brought by the appellant to recover from the appellee the sum of $200 bounty, under Ord. No. 8, of the Mayor and City Council of Baltimore, approved February 16th, 1864. The facts of the case as agreed upon by the counsel of the respective parties are as follows:

The appellant, a colored soldier, enlisted at Baltimore City, in Company G, Fourth Regiment of United States Colored Troops, (infantry,) a regiment raised in said city, and credited and apportioned as a part of the quota of said city, under the call of the President of the United States for 500,000 men, dated February 1st, 1864, and he was enlisted and mustered into the service of the United States on the 11th of August, 1863, and continued therein until May 4th, 1866, when he was honorably discharged. He was recognized by the Governor of the State and the Assistant Provost Marshal General of the United States, for Maryland, as a part of the quota of the City of Baltimore, under the call of the President, dated February 1st, 1864, for 500,000 men, and by said enlistment and by his being apportioned as a part of the quota of said city, the quota of troops required to be furnished by said city was thereby diminished to that extent. Official and satisfactory evidence that he had been mustered into the service of the United States, was received by the Register of the City of Bal-

---

   (b)  Cited in *Smith v. State*, 66 Md. 217.

   (c)  Cited in *State v. Archer*, 73 Md. 61.  See also *Baltimore v. Moore*, 6 H. & J. 315; *Canal Co. v. Railroad Co.*, 4 G. & J. 90; *Kent v. Somervell*, 7 G. & J. 192; *Lucas v. McBlair*, 12 G. & J. 13; *Burns v. Balto.*, 48 Md. 206. But if contradictions exist between the preamble and the enacting clause, the latter will prevail; *Hays v. Richardson*, 1 G. & J. 203.

   (d)  Cited in *Gable v. Scott*, 56 Md. 183; see also *Magruder v. Carroll*, 4 Md. 335-336, note (b). When the language of a statute clearly indicates an intention that it shall have a retroactive effect, it must be so applied; *State v. Norwood*, 12 Md. 206; *Trustees v. McKinstry*, 75 Md. 191.

timore, and that he was apportioned as a part of the quota of said city, under the call of the President of the United States as aforesaid, that call being referred to in Ord. No. 8, of the Mayor and City Council of Baltimore of 1864, as " The late call of the President," also that he was honorably discharged from the service of the United States at Baltimore, May 4th, 1866. He never received any bounty whatever from the City of Baltimore. At the time of the passage of Ord. No. 8, of 1864, the City of Baltimore was not in a state of military siege, and there were no hostile troops in the vicinity of, and menacing said city, and the appellant *was with his regiment in the field in **279** the army of the Potomac, which was in the State of Virginia, and the services of said regiment were never required within the State of Maryland to repel any actual invasion of the State. When Ord. No. 8, of 1864, was adopted, no part of the 1,500,-000 dollars which the City of Baltimore was authorized to appropriate by the Act of Assembly of 1861, ch. 75, was either used or appropriated.

The case was tried before the court (Garey, J.,) without the intervention of a jury, and judgment was rendered for the defendant. Thereupon, the plaintiff appealed.

The cause was argued before Bartol, C. J., Stewart, Brent, Miller and Robinson, JJ.

*F. P. Stevens* and *Milton Whitney,* for the appellant:

The appellant was mustered into the service of the United States " *as a part of the quota of the State,*" he was recognized by the Governor, etc., as a part of the quota of the City of Baltimore, *under the call of the President for five hundred thousand men;* by his *enlistment,* and by his being apportioned, etc., the city's quota was diminished; he enlisted in a regiment raised in the city, and was credited as a part of its quota, he is, therefore, within the provisions of Ord. No. 8, approved February 16, 1864. The appellant being within the provisions of the Ordinance, a sufficient consideration existed to sustain the promise on the part of the city as prior to circular No. 3, of January 12, 1864, issued from the War Department, the party enlisting as a volunteer was entitled to be credited to such locality as he might elect. The consideration on the part of the city

was the *crediting* of the party, whereby its quota was reduced. This credit is admitted.

The Mayor and City Council of Baltimore were legally empowered to pass Ord. No. 8, approved February 16th, 1864. Act of 1861, ch. 1; 1861, ch. 75, and 1864, ch. 246.

**280** *The proclamations of the President of the United States of the 17th of October, 1863, and of the 1st of February, 1864, became law which the State of Maryland was bound to observe. The City of Baltimore · was bound to furnish its quota, and in order to relieve its citizens from being subject to a draft, it was authorized, under the legislation heretofore referred to, to pass the Ordinance in question. *Taylor v. Thompson*, 6 Am. Law Reg. N. S. 174; *Speer v. School Directors of Blairsville*, 50 Pa. St. 159; *Ahl v. Gleim*, 52 Pa. St. 432.

*Robert D. Morrison* and *Wm. Henry Norris*, for the appellee:

The Ordinance under which the appellant claims was never authorized or ratified by the Legislature, and is therefore inoperative and void. The only debt-creating powers of the Mayor and City Council are conferred by the Pub. Local Laws, Art. 4, sec. 866, and the Act of 1861, ch. 1, and 75. The Ordinance in question was not authorized by this section, nor by the Act of 1861, ch. 75. · *Lowe v. Marysville*, 5 Cal. 214. Nor was it authorized by the Act of 1861, ch. 1, because, although it is entitled " An Ordinance to provide for the defense of the city," etc., it does not to any extent provide for the defense of the city, as contemplated by the Act. *Glenn v. Baltimore*, 5 G. & J. 424; *Baltimore v. Clunet*, 23 Md. 468.

The corporation was incompetent to pass such Ordinance, unless specially authorized by the Legislature. *Booth v. Woodbury*, 5 Am. Law Reg. N. S. 202; *New London v. Brainard*, 22 Conn. 552; *Clark v. Des Moines*, 6 Am. Law Reg. N. S. 146; 13 Mass. 271; *Baltimore v. Porter*, 18 Md. 301; *Ferrin v. Portland*, 53 Maine, 458.

The State itself had no power to raise troops, and could of course confer no such power upon the corporation. Constitution of the U. S., Art. 1, sec. 10; *Rogers v. Burlington*, 3 Wallace, 663, 665; *Mitchell v. Burlington*, 4 Ib. 273.

*Supposing the Ordinance to be valid, the appellant **281** is not entitled to bounty under its provisions. No recovery can be had upon the common counts, as no contract can be implied where there exists an express contract. *Stockett v. Watkins,* 2 G. & J. 341. So that a recovery must be had, if at all, on the special counts. These counts are on an express promise, and the plaintiff is not within its terms. *Freer v. Hardenburg,* 5 John. 273.

If the appellant were within the terms of the promise, the promise was one without consideration, as it was manifest that the appellant was mustered into the service of the United States prior to the making of the promise, and had no control over the question as to where he should be credited. The City of Baltimore *was entitled* to a credit for the enlistment and mustering in of the appellant, by force of the provisions of circular No. 3, issued from the War Department, as well as by the very terms of the President's proclamation: " I further proclaim, that all volunteers received under this call, *as well as all others not heretofore credited, shall be duly credited on, and deducted from, the quotas established for the next draft."*

Robinson, J., delivered the opinion of the court.

On the 17th of October, 1863, the President issued a proclamation, calling upon the Governors of the several States, to " raise and have enlisted for the various regiments in the field, from their respective States, their quotas of three hundred thousand men."

The States failing to furnish their quotas under this call, the President issued the following order:

Executive Mansion, February 1, 1864.

Ordered, that a draft for five hundred thousand men, to serve for three years, or during the war, be made on the 10th of March next, for the military service of the United States, crediting and deducting therefrom, so many as may *have **282** been enlisted or drafted into the service prior to the 1st day of March, and not heretofore credited.

(Signed)        ABRAHAM LINCOLN.

By order of the Secretary of War.

E. D. TOWNSEND, *Asst. Adj't Gen'l.*

On the 16th of February, 1864, the following Ordinance was passed by the Mayor and City Council of Baltimore:

Section 1. *Be it enacted and ordained by the Mayor and City Council of Baltimore,* That the sum of six hundred thousand dollars, or so much thereof as may be necessary, be and the same is hereby appropriated to be used exclusively as a bounty fund, and to be paid to such persons as may have volunteered, as well as those who may volunteer, to fill any regiments, battalions and companies now in the field, heretofore raised in the City of Baltimore, or in the several regiments or artillery or cavalry companies raised, or to be raised, in the City of Baltimore, and have been or' may be mustered into the service of the United States as a part of the quota of said city, under the late call of the President of the United States, for five hundred thousand men.

Section 2. *And be it enacted and ordained,* That every non-commissioned officer, private, bugler, drummer and fifer who may have volunteered, or who may volunteer, and who may be mustered into the service of the United States, in any of the regiments, or artillery or cavalry companies that have been, or that may be, raised in the City of Baltimore, and who may be recognized by the Governor of the State and the Assistant Provost Marshal General of the United States as a part of the quota of the City of Baltimore, under the late call of the President of the United States, for five hundred thousand men, and none others, shall be entitled to the sum of two hundred dollars—one hundred dollars payable on being mustered into the service, etc.

Section 3. *And be it enacted and ordained,* That on receiving satisfactory evidence that any party claiming the benefits **283** *of this ordinance has been mustered into the service of the United States as a part of the quota of the City of Baltimore, under the call of the President of the United States as aforesaid, etc.

It is admitted that the appellant enlisted at Baltimore City, in Company G, Fourth Regiment of United States Colored Troops, a regiment raised in the city and credited as part of the quota of the city under the call of the President for five hundred thousand men. That he was mustered into the service on the 11th of August, 1863, and was honorably discharged

in May, 1866. The right of the appellant, under this statement of facts, to recover the bounty of two hundred dollars, is the question submitted to this court. With regard to the policy of the Ordinance, whether expedient or inexpedient, just or unjust, are questions with which we have nothing to do. If passed by a corporation within the scope of its delegated powers, it is valid and must be so declared by this court; assuming then, in this case, the Ordinance to be a valid exercise of legislative power,—and on this point we express no opinion,—it is our duty to interpret it according to the intention of the framers of the law. " The only rule," says Chief Justice Tindal, " for the construction of Acts of Parliament, is that they should be construed according to the intent of the Parliament which passed the Act." *Dukedom of Sussex,* 8 Lond. Jur. 795. To ascertain this we are first to consider the words employed, and interpret them according to their plain, ordinary and natural import, having some regard to their order and grammatical arrangement. If they are clear, precise and unambiguous, the Legislature must be understood to mean what it has plainly expressed. On the part of the appellant it is insisted that the Ordinance acts retrospectively, and includes within its terms, all who had volunteered, and who were credited upon the quota of the city under the late call, without reference to the time of their enlistment. Now it is a universal rule, that no statute will be construed to act retrospectively, unless such a purpose be plainly expressed.

*Is there anything in this Ordinance which thus **284** plainly declares such an intention? Provision is made in the first section for a bounty fund of six hundred thousand dollars, "to be paid to such persons as may have volunteered as well as those who may volunteer to fill up any regiments," " raised or to be raised in the City of Baltimore, and have been or may be mustered into the service of the United States as a part of the quota of said city, under the late call of the President of the United States for 500,000 men." Two classes of volunteers are here provided for, those who have volunteered and those who may volunteer, *and who are mustered into the service and credited to the quota of the city, under the late call of the President.* Is not express provision here made that the fund is to be paid to persons coming within one of the two classes? Are not the

words " have been or may be mustered into the service of the
United States as part of the quota of said city, under the late
call," used to qualify and designate those who are to be entitled
to the bounty? Can such language be interpreted to include
those who were not mustered into the service under the late
call of the President—persons who had enlisted prior, and with-
out any reference to the proclamation? If such had been the
intention, why qualify the sentence by adding, " under the late
call of the President." But we are told, that this only refers to
" the quota of the city." If so, what disposition is to be made
of that part of the same sentence which says, " have been or
may be mustered into the service of the United States as part
of the quota." It was admitted that the appellant enlisted prior
to the call of the President, and he could not therefore have
been mustered into the service as a part of the quota of said
city under the call.

So in the second section, " Every non-commissioned officer"
" who may have volunteered, and who may volunteer, *and who
may be mustered into the service,*" " and who may be recog-
nized by the Governor of the State," " *as a part of the quota of
the City of Baltimore, under the late call of the President,*"
" and *none others,* shall be entitled to the sum of two
**285** *hundred dollars." Express provision is made for the
retroactive operation of the Ordinance, but only as to those
" who may have volunteered, or who may volunteer, and who
may be *mustered into the service,*" "and who may be recog-
nized by the Governor" " as *part of the quota,*" " *under the
late call.*" To entitle a party to claim the bounty of two hun-
dred dollars, under this section, it declares he must be *mustered*
into the service of the United States *as a part* of the *quota* of
the city *under the late call.* "None others" shall be entitled, is
the language used.

And again, the third section provides, " That on receiving
satisfactory evidence, that any party claiming the benefit of
this Ordinance, has been mustered into the service" " as a part
of the quota of the city " " under the call of the President,"
" the Register " shall pay, etc. What is here made the very
basis of the claim? Not that the party has volunteered—not
that he was mustered into the service, but *that he was mus-
tered into service as a part of the quota of the city, under the*

*late call.* Will it be contended that the appellant comes up to the standard of proof required by this section? Was he *mustered* in, as a part of the city's quota, *under the late call?*

If, however, any doubt can arise from the language of the Ordinance, let us look at the preamble, which, in cases of ambiguity, Chief Justice Dyer says, "is the key to open the minds of the makers of the Act." Here it is declared to be an Ordinance "to provide for the defense of the city by encouraging enlistments" "in the several regiments now in the field, or now being raised, by order of the President," " under the late call," " by paying bounty to such volunteers as have enlisted, or may enlist, in the City of Baltimore, to make up the quota apportioned to said city." By paying bounty to whom? To those who have *enlisted,* or may *enlist,* to *make* up the *quota* apportioned to said city.

This construction of the Ordinance is strengthened when viewed in the light of the surrounding circumstances under which it was passed, and to which it owed its origin. It was *passed on the 16th of February, 1864. On the 1st of **286** March the draft was ordered to take place. All efforts to furnish the quota apportioned to the city had failed. It was in this emergency, and to avert the draft then impending, that the Ordinance was passed. To induce persons to volunteer, by the payment of bounties, and thus furnish the city's quota, was the manifest purpose of the law—not to pay those who had enlisted prior to the call, because, by General Order No. 35, the quota of the city had already been diminished to the extent of their enlistment.

If, therefore, in the interpretation of this Ordinance, we are to be governed by the language in which it is expressed, or if such be doubtful, by the preamble, or by the circumstances to which it owed its origin, and the causes which led to its enactment, or by all combined, we are of opinion that the appellant does not come within its terms. Nor is this construction inequitable to the appellant. He had enlisted long prior to its passage, and whatever were his motives in enlisting, he cannot be said to have acted upon the faith of any promises made or inducements held out by the appellee. To the supposed equity in the plaintiff's claim, from the fact that the city was credited with his enlistment, it is sufficient to say, that it is our

duty to declare what the law is, and not what it ought to be. Such being our interpretation and construction of the Ordinance, the judgment must be affirmed.

*Judgment affirmed.*