GEORGE A. THRUSTON vs. WILLIAM DEVECMON.

*Equity Practice — Decretal order or Order in the nature of a Final Decree.*

An order finally ratifying an auditor's report and account, directed the trustees, who had previously made sale of the property in the proceedings mentioned, to distribute the money in their hands according to the audit ratified; this one of the trustees declined to do in respect of a party to whom a portion of the trust fund had been awarded by the audit; his co-trustees were willing to comply with the order. HELD:

That a petition by the person so claiming a portion of the trust fund, asking that the trustees might be compelled to pay the same under an order of the Court, was the regular and proper course of proceeding.

An order finally ratifying an auditor's report and account, is a decretal order or an order in the nature of a final decree, and the term at which it was passed and filed as also the succeeding term having expired, it cannot be revised and modified on petition, suggesting fraud and malpractice not in reference to obtaining it, but in regard to a claim allowed by the auditor.

The only proper modes recognized by law for revising or annulling a decree or a decretal order after enrolment, in the absence of surprise or irregularity in obtaining it, are by bill of review for errors apparent on the face of the proceedings, or for some new matter discovered since the order or decree was passed, or by original bill for fraud.

APPEAL from the Circuit Court for Allegany County, sitting in Equity.

This appeal was taken from the decision of the Circuit Court, sitting as a Court of Equity, on two petitions; the first filed by the appellee on September 1st, 1866, in a cause then depending in said Court, (wherein George F. Gephart and others were complainants, and John C. Stoven and others defendants,) against George A. Pearre, Charles B. Thruston and James M. Schley, (co-trustees with the appellant,) and the appellant, stating that said trustees had sold the property decreed to be sold in the cause, and reported the same, &c.; that an audit had been made, distributing

the proceeds to creditors, &c., in which the sum of $2,092.19 was allowed to the petitioner; that said audit had been finally ratified and confirmed on the 7th day of July, 1866, (it was filed on the 9th of the same month.)

The petition also stated that after the ratification of the audit, the appellee demanded from the trustees, payment of such sum, for which three signed a check payable to his order, but the appellant refused to do so; that the money was deposited in bank to the credit of the four trustees, and the ·bank refused to cash or pay the check unless signed by the appellant also; that the appellant wholly refused to sign it; that petitioner was remediless, except by the authority of the Court, in Equity; that he had offered an indemnity bond to the trustees for double the amount so distributed, if they would pay the same; that the audit and its ratification gave him a right to recover the money from said trustee. The petition then prayed for an order to compel the trustees to show cause, and *answer under oath, on some day to be fixed by the Court,* why they would not pay the sum audited as aforesaid, and to compel them to pay all sums distributed to him by said audit, &c.

On the 5th of September, 1866, an order was passed on this petition, requiring the trustees to *show cause on oath,* on or before October 1st, 1866, why they would not pay the money distributed by said audit to the petitioner, as appears in the auditor's first report, ratified on the 7th day of July, 1866, referred to in said petition, and to bring into Court the said money, bonds, &c., received as purchase money, &c., to be disposed of under its orders.

The appellant alone on the 15th of October, 1866, answered this petition; in his answer he set forth two grounds of defence for having refused payment of the sum audited to the appellee: First, that the same was entered "to the use of the appellee" whilst the auditor was preparing his report, and after it had so far progressed as to have been previously audited to the Allegany County Bank alone, "the use" being interlined

in the audit, upon the simple order of the appellee as attorney for himself, without any knowledge whatever of the appellant that such audit was so being made, or was to be, or was so made; and second, that prior liens of attaching creditors of the Allegany County Bank, had so affected the fund when the audit was ratified, as to prevent its application to any other claims than the liens referred to. The levy under these attachments was laid in the hands of the appellant, and Thomas Devecmon, trustees.

The second petition filed on the 18th of October, 1866, by the attaching creditors of the Allegany County Bank, including the appellant in his capacity as administrator, set forth the laying of the writs of attachment in the hands of the appellant and Thomas Devecmon, trustees, (the latter having since deceased, about October 21st, 1864,) on the chattels, rights, credits, &c., of the bank, that said garnishees were duly notified to appear and answer, &c.; that said suits were still pending and unanswered by the appellant, one of the trustees in this cause, that they were advised and charged that said suits so levied, &c., would seize and take all credits and property of said bank, viz: $2,092.19, and subsequent distribution, when distributed, due by said trustees to said bank, and that by the levy laid in the hands of the appellant, trustee, with notice of the same to his co-trustees in this cause, that the fund still remained in bank to the credit of the four trustees and under the control of the Court, and liable to said creditors according to their several priorities, &c.; that until said audit was finally ratified, they could not expect the same to be answered by the garnishee, so as to obtain these judgments, &c.; and stated further the steps which they were advised were necessary to enable them to enforce said attachments, &c.

The petition then stated that the said $2,092.19 belonged wholly to the bank and not to the appellee; and that there was no evidence in the cause, and none was produced before the auditor, authorizing him to audit the claims of said bank

to the use of the appellee; that there had not been, since the claim of the bank itself was filed in the cause, and said suits were instituted, any agent or officer of the bank who could assign or control or dispose of said claim for the bank, or who could do anything with said claim whatever; that the appellee did not own it, and could not acquire it; and that the order to enter the same to his use, by his own authority only, was of no avail whatever for such purpose.

The petition then prayed the Court to order said words to be stricken from the audit, or the audit to be remanded for that purpose, so that the trustees might pay the same to the bank or its creditors with safety, so that such and all future sums distributed to the bank on its said claims might be paid and audited to the bank or its attaching creditors, and for further relief; and for an order requiring the appellee (not upon oath) to answer and show cause, &c.  An order was passed accordingly requiring the appellee to answer and show cause, &c.

The answer of the appellee, under oath, filed on the 10th of December, 1866, denied the jurisdiction of the Court to grant any relief to the petitioners, because they were not parties to the suit, and had no standing in Court.  And further, because first, by the audit so finally ratified, nothing appeared due from the trustees to the bank, in whose right and as whose creditors the petitioners claimed the sum aforesaid; but the same was by the order ratifying the auditor's report, adjudged and ordered to be paid by the trustees to the respondent; that the order finally ratifying the report was passed during a term of the Court which had expired, and could not be enquired into.

Second. Because the petitioners' suits were defective and illegal, and they had a full and adequate remedy at law.

Third. Because the attachment writs were not laid in the hands of the trustees, nor were they warned and summoned by the Sheriff to show cause, &c., why said fund in their hands should not be condemned, &c., and if the same had

been distributed to the bank, and no sum was so audited and distributed to the bank, the petitioners could not have acquired by their writs of attachment any lien upon said sum or any sum in the hands of the said trustees.

The appellee further answered; but the same, for the purposes of this cause, need not be repeated. He insisted that the petition should be dismissed, &c. The matter of the two petitions, answers and testimony, having been set down for hearing, the Court (R. JOHNSON, JR., Special Judge,) on the 27th of February, 1866, passed an order dismissing the petition of the attaching creditors of the bank, and requiring the trustees to pay to the appellee the sum of $2,092.19 as claimed by him. From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY and ROBINSON, J.

*George A. Thruston,* for the appellant:

The order of final ratification of the auditor's report was passed on the 7th of July, 1866, but was not filed until the 9th of the same month, being the day of commencement of the July Term of that year. The question for determination by the Court is, was the audit filed at a term of the Court which had finally closed, because the attaching creditors of Allegany County Bank did not file their petition in said cause until the 18th of October, 1866? *Code of Public Local Laws, Art.* 1, *sec.* 10.

But even if the term had passed, so long as the fund or any part of it remained in Court, (and particularly in a case like the present,) it was not too late to obtain a petition therein, or any other appropriate proceeding. *Glenn vs. Clapp,* 11 *G. & J.,* 1; *Greig vs. Somerville,* 1 *Rus. & Myl.,* 5 *Eng. Ch. Rep.,* 346, *and notes to American cases; Brooks vs. Gibbons,* 4 *Paige,* 374; *Hammond vs. Hammond,* 2 *Bl.,* 364; *Alex. Chan. Prac.,* 143; *Marbury vs. Stonestreet,* 1 *Md.,* 147.

In this case the appellee himself asks the aid of the Court after the term had passed, *as he alleges,* at law, and having thereby given the equity side of the Court jurisdiction of the subject matter, (conceding he had the right to ask the aid of the Court in such behalf, instead of pursuing his remedy at law,) this Court can grant full relief, after thus obtaining jurisdiction. *Story's Eq. Juris.,* secs. 65, 68; *Brown vs. Gilmor's Ex'rs,* 8 *Md.,* 322; *Drake on Attach't,* 448, *note* 5.

*William Walsh,* for the appellee:

As a trustee the appellant had no right to appeal, and though his name be included in the petition of the attaching creditors of the bank, as administrator of Sohr and Hite, two of said creditors, there is no proof whatever of it in the cause. None of the other attaching creditors appealed; all acquiesced; none of them are here complaining, but this trustee, who, as such, has no right to be here; and as a creditor he has failed to furnish evidence of his right.

The audit having been finally ratified, and the appellant, one of the trustees, ordered to pay out the fund, the proper course for the appellee was to file a petition to compel him. *Alex. Ch. Pr.,* 78; *Frieze vs. Glenn and Stewart,* 2 *Md. Ch. Dec.,* 361; *Marbury vs. Stonestreet,* 1 *Md.,* 156.

The order ratifying the audit was a final decree. *Wayman vs. Jones,* 4 *Md. Ch. Dec.,* 500; *Contee vs. Dawson,* 2 *Bland,* 264; *Brown vs. Gilmor's Ex'rs, et al.,* 8 *Md.* 322; *Hitch vs. Davis,* 8 *Md.,* 525.

The decree being final would be opened even during the term only for good cause fully proved; as the solemn judgment of the Court, it should not be lightly disturbed. *Moore vs. White,* 4 *H. & J.,* 548; *Tabler vs. Castle,* 12 *Md.,* 144; *Nowland vs. Glenn,* 2 *Md. Ch. Dec.,* 368; *Green vs. Hamilton,* 16 *Md.,* 326; *Kemp & Buckey vs. Cook & Ridgely,* 18 *Md.,* 130; *Montgomery vs. Murphy,* 19 *Md.,* 576.

The decree having been enrolled, and even in the second term after enrolment, before it was assailed, can not be

affected except by bill of review or original bill for fraud. *Burch, et al. vs. Scott,* 1 *Gill & Johns.,* 393; *Pfeltz vs. Pfeltz,* 1 *Md. Ch. Dec.,* 455; *Lovejoy vs. Irelan,* 19 *Md.,* 56; *Tomlinson vs. McKaig,* 5 *Gill,* 256, 277.

The term had passed on the 9th of July, 1866, and a second term had passed on the first Monday of October, 1866, and before any objection was made to the audit, to which exceptions had *never been taken.* Code of *Pub. Local Laws, Art.* 1.

[Other questions presented and discussed have been omitted from the argument, inasmuch as they were not passed upon by this Court.]

ALVEY, J., delivered the opinion of the Court.

By the order of the 7th of July, 1866, ratifying the auditor's first report and accounts, "no cause to the contrary having been shown," the trustees were, by explicit terms, ordered to pay out the money in their hands, according to the audit ratified. This order the trustees could not rightfully disobey. They were the officers of the Court, exercising simply the powers conferred upon them by the previous decree of sale, which required them to bring the money into Court to be disposed of under its direction, and any order directing the application of the fund arising from the sale should have been at once respected and obeyed by the trustees, without question. This, however, one of the trustees declined to do, but made question of the order directing the application of the money in his hands, while his co-trustees were ready and willing to observe and comply with the order. Under such circumstances, the proceeding adopted by the appellee to compel the non-complying trustee to pay over the money was competent and proper. 2 *Md. Ch. Dec.,* 362.

This order, of the 7th of July, was a decretal order, or an order in the nature of a final decree. It contained no reservation of equities, or power of further direction, but was final upon the rights of the parties, and could only be dealt with as a definitive decree. Such being its character, it is sought

to be revised and modified on petition, suggesting fraud and malpractice, not in reference to obtaining the order of ratification, but in regard to the claim allowed to the appellee, and the question is, can it be done under the facts and circumstances of this case?

The term of Court at which the order was passed and filed, expired on the 9th of July, 1866, two days after the date of the order. The succeeding term commenced on the 9th of July, and expired on the first Monday of October then next. The petition of the appellant and others was not filed until the 18th October, 1866. Thus the term at which the order was passed, and the next succeeding term, were allowed to expire before proceeding taken by petition to change and modify the order of ratification. We think this petition came too late to accomplish the purpose in view.

There is no question but that during the term at which this order was passed, it remained subject to the control of the Court, and liable upon proper ground shown, *by petition,* to be altered, revised or entirely revoked. But after it was signed and filed, and the term had expired at which it was made, it from that time became enrolled, and, according to the general rule, was no longer subject to be called into question by mere petition. Being enrolled, it must be allowed to stand for what it purports to be on its face, until revised or reversed in a more solemn and formal manner than can be done on petition. 1 *Gill & John.,* 393; 1 *Md. Ch. Dec.,* 455. And the only proper modes, recognized by law, for reversing or annulling a decree or a decretal order, after enrolment, in the absence of surprise or irregularity in obtaining it, are by bill of review for errors apparent on the face of the proceedings, or for some new matter discovered since the order or decree passed, or by original bill for fraud. *Tomlinson vs. McKaig,* 5 *Gill,* 256.

The case of *Oliver vs. Palmer & Hamilton,* 11 *Gill & John.,* 137, has been relied on as justifying the proceeding by petition. In that case, proceeding had taken place under the Act

of 1820, ch. 161, of an *ex parte* character, and after the decree was enrolled, a petition was filed to vacate the enrolment, upon the ground of surprise, and asking to be let in to answer to the merits. The Court of Appeals held that the party applying could be relieved on petition. That case, however, belongs to a class forming an exception to the general rule, and can have no application to a case like the one before us. There was no allegation of fraud, and the sole ground was the surprise to the defendant in obtaining the decree. "Had," said the Court, "the design been to set aside the decree for fraud, the remedy would clearly have been by bill of review, *and not by petition*." In the case before us, the ground for modifying and revising the order is the alleged fraud and malpractice of the appellee; so that, according to the case relied on, the remedy is not by petition, but by bill only. Without, therefore, deciding the several other questions discussed in the argument, we must affirm the order appealed from, because it was not liable, under the facts of this case, to be reviewed on petition.

*Order affirmed.*

(Decided 19th February, 1869.)