(Decided 18th June, 1891.)

STATE OF MARYLAND *vs.* EDWARD W. STIEFEL.

*Indictment—Demurrer—Liquor license—Brewers and Distillers—Act of* 1890, *ch.* 343, *Regulating the Sale of Intoxicating liquors in the City of Baltimore.*

Section 653 L, of the Act of 1890, ch. 343, regulating the sale of intoxicating liquors in the City of Baltimore, provides that "distillers, brewers, wholesale dealers, and jobbers, shall not be allowed or permitted to sell distilled or fermented liquors in less quantities than unbroken packages, or less than packages of one gallon each, and that they shall pay a license fee of two hundred and fifty dollars per annum for the privilege of selling distilled and fermented liquors as aforesaid." HELD :

1st. That this section taken in connection with other portions of the statute, only requires a license in the cases mentioned, where the liquor sold is to be drunk on the premises.

2nd. That an indictment under this Act, charging that a brewer of fermented liquors unlawfully did sell "fermented liquor to A. D. in unbroken packages, containing not less than one gallon each, without first taking out a license therefor," is bad on demurrer.

APPEAL AS UPON WRIT OF ERROR, from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., IRVING, BRYAN, FOWLER, and McSHERRY, J.

*Bernard Carter,* for the appellant.

*Thomas R. Clendinen,* and *Arthur W. Machen,* for the appellee.

BRYAN J., delivered the opinion of the Court.

Edward W. Stiefel was indicted in the Criminal Court of Baltimore. The indictment charged that he, being a brewer of fermented liquors, unlawfully did sell "fermented liquor to Adam Dietrich in unbroken packages, containing not less than one gallon each, without first taking out a license therefor." The Court sustained a demurrer to the indictment, and the State has brought the case to this Court by petition in the nature of a writ of error.

The question to be decided turns on the construction of the Act of 1890, chapter 343. The statute belongs to the class of Public Local Laws, and is confined in its operation to the City of Baltimore. Its leading object was to mitigate some of the evils connected with the sale of intoxicating liquors. Long experience had shown that these were of most frequent and scandalous occurrence in public drinking houses. The greater portion of the statute is directed to a strict control and supervision of these places; and it requires a careful scrutiny into the character and previous conduct of applicants for license to retail spirituous liquors therein, with the purpose that none should be licensed, except those who would keep decent and orderly houses, and would obey the laws on the subject of these sales. It was considered that the exaction of a license fee of two hundred and fifty dollars, instead of fifty dollars previously required, would diminish the number of applications, or keep the traffic

out of the hands of objectionable persons. At all events the Legislature saw fit to increase the charge for licenses, with the expectation that it would in some way promote the general policy of lessening the evils in question. Three-fourths of the money derived from them were granted to the City of Baltimore; but it cannot be supposed that this pecuniary benefit to the city was one of the cardinal objects of the law. An examination of some of the features of the Act will disclose more particularly its scope and effect. Section A enacts as follows:

"No person shall sell, offer for sale, or keep for sale, in the City of Baltimore, any intoxicating liquors, except as hereinafter provided; but this shall not apply to sales made by a person under a provision of law requiring him to sell personal property, nor to sales of liquors by wholesale, nor to sales by the maker, brewer or distiller thereof, not to be drunk on the premises." This section certainly exempts persons of the descriptions named from the operation of the law, except in the single instance where the liquors sold by them are "to be drunk on the premises." We shall see whether it is affected or modified by subsequent provisions.

Sections B, C, and D, relates to the establishment of a Board of liquor license commissioners for Baltimore City. Section E is as follows: "No licenses to sell intoxicating liquors other than by wholesale traders, distillers, brewers and rectifiers, shall be granted in the City of Baltimore except by said board, and only to citizens of the United States of temperate habits and good moral character, who have complied with the requisites of this Act." This section shows that persons of the occupations named are not required to obtain licenses from the Board. It is implied that they must obtain them in some quarter; but it is not stated in this section, under what circumstances they are required to have them. We must obtain this information elsewhere. Section L is

the only portion of the statute which refers to this matter. It requires a license in three classes of cases; and in each case a fee of two hundred and fifty dollars must be paid. The first class is composed of those who have satisfactorily stood the tests prescribed for persons who desire to sell distilled liquors by retail at a hotel, restaurant, or such like place. The second consists of *bona fide* retail grocers who wish to sell liquors in unbroken packages, or in quantities not less than a pint, and in no case to be drunk on their premises. Before considering the third class of persons to be licensed, we must notice that the two classes just mentioned are composed of persons who sell directly to the consumer; and we must also bear in mind that section A excludes from the operation of the Act sales by brewers, unless made directly to consumers who are to drink the same on the premises. We are now prepared to examine this third class. It is described in these words: "and provided, that distillers, brewers, wholesale dealers, and jobbers, shall not be allowed or permitted to sell distilled or fermented liquors in less quantities than unbroken packages, or less than packages of one gallon each, and that they shall pay a license fee of two hundred and fifty dollars per annum for the privilege of selling distilled and fermented liquors as aforesaid." And at the close of this section, it is provided that no retail license shall be issued to any distiller or brewer. A strict grammatical construction of the clause just quoted would entirely deprive it of meaning. It would lead to the result that the persons named were forbidden to sell in less than unbroken packages, or in quantities less than a gallon; and yet that they should pay a license fee for the privilege of doing the forbidden acts. This interpretation would be self-contradictory, and would, moreover, be in conflict with the last portion of the section, which declares that no retail license shall be issued to any distiller or brewer.

We must seek the meaning of the clause by some other method. Although these persons were forbidden to sell in less than unbroken packages, or packages less than a gallon, of course, it was not intended to prohibit sales in packages of as large, or larger size; and the meaning is the same as if it had been stated in express terms that these sales were allowed. The words in the clause "the privilege of selling distilled or fermented liquors as aforesaid" refer to, and designate the right to sell in these large packages; and for this right the license fee is required to be paid. But this requirement is subject to some limitation as will presently be seen. We notice the words *"unbroken packages"* in connection with the business of wholesale dealers, brewers, and others. The phrase is of frequent occurrence in the various controversies respecting the rights of importers. Wholesale dealers would very probably at some time import intoxicating liquors in the course of their business; and the Legislature may have had in mind the right of an importer to sell an unbroken package without being subject to State taxation, by the exaction of a license, or otherwise. But they knew that they might tax the importer for the privilege of permitting persons to drink on his premises the liquor sold by him in an unbroken package. It is more reasonable to suppose that the license is required for something which the State had a right to tax and restrict, than for making a sale with which it had no constitutional right to interfere. And brewers, distillers, and jobbers are placed by this clause in the same category as wholesale dealers.

The Act of Congress of August, 1890, has subjected to State legislation imported liquors in their original packages; but such was not the case when the Act of Assembly was passed which we are now considering. If we say that the license is required for the sale in these packages only when the liquor is to be drunk on the premises, we

State *vs.* Stiefel.

give full effect to Section A, and we make this clause in harmony with all the other portions of the statute; inasmuch as they deal exclusively with sales made directly to consumers, and evidently regard them as the transactions which required restriction and rigid control. On the other hand, without the limitation that the liquor is to be drunk on the premises, Section A is completely nullified; and the distinct definition of the scope and purpose of the Act therein made, is rendered meaningless. And we must remember that this definition is declared at the very beginning of the Act, for the evident purpose of interpreting and explaining all its provisions. Some weight must also be given to the consideration, that by the traditional policy of the State, makers and manufacturers have always been exempted from the necessity of a license for the sale of their own products. In this statute we see great changes in the previous law, and they are made in language clear, perspicuous and explicit; and it is very evident that their purpose was to strike a decided blow at an enormous public evil. But it is nowhere intimated that the brewing of fermented liquors was regarded by the Legislature as an evil which ought to be corrected and kept under control. At most, the construction in favor of taxing the business of brewing is an uncertain inference from expressions of a dubious and equivocal character. We cannot hold it to be a safe exposition of this statute, that a right recognized and protected by legislative enactments, time out of mind, should be taken away in this manner.

Upon the whole, it is our opinion that the judgment sustaining the demurrer ought to be affirmed.

*Judgment affirmed.*

(Decided 18th June, 1891.)