FREDERICK IRON & STEEL COMPANY ET AL. *v.* GEORGE W. PAGE, RECEIVER.

[No. 42, April Term, 1933.]

*Decided June 21st, 1933.*

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Leo Weinberg, Joseph C. France,* and *Charles McH. How-ard,* with whom were *Venable, Baetjer & Howard,* on the brief, for the appellants.

*John S. Newman,* with whom was *Walter H. Buck* on the brief, for the appellee.

*Stuart S. Janney* submitted a brief as *amicus curiae.*

SLOAN, J., delivered the opinion of the Court.

The Frederick Iron & Steel Company, appellant, on September 14th, 1931, filed a petition in the Circuit Court for Frederick County, in which it alleged that the Central Trust Company, then in the hands of George W. Page, bank commissioner, as receiver, was the trustee under a mortgage or deed of trust from the petitioner dated April 1st, 1930, to secure a bond issue of $200,000, payable in the installments therein set forth, and that on October 1st, 1931, there would be due the semi-annual interest on the bonds amounting to $7,000; that by the terms of the mortgage, the mortgagor was required to deposit with the trustee on the 15th day of each and every month one-sixth of the current semi-annual interest in order to insure the payment of the semi-annual interest on the bonds so secured, and that it had on deposit with the trustee for that purpose, at the time the petition was filed, $5,833.34, to be applied to the interest coupons payable October 1st, 1931, and it prayed that an investigation be made to determine whether the interest so deposited was in the possession of the Central Trust Company. This petition

was answered by the receiver, and later another petition was filed by the steel company, praying the appointment of the Farmers' & Mechanics' National Bank of Frederick as substituted trustee under the mortgage, and further prayed an order directing George W. Page, receiver, to pay over to the substituted trustee the interest money so deposited with the Central Trust Company, and, though not so stated in terms or by reference, the petitioner thus invoked the security to *cestuis que trust* afforded by section 48 of article 11 of the Code.

On November 28th, 1931, an opinion was filed, wherein the chancellors expressed the opinion that the petitioner came within the provisions of section 48, but added: "This expression of our view on the subject will not now be accompanied by an order, which should properly await further progress in the administration of the receiver." On January 18th, 1933, this court decided the case of *Frederick County Commrs. v. Page*, 163 Md. 619, 164 A. 182, in which the opinion expressed the view that section 48 of article 11 of the Code only excused trust companies from giving bond in such fiduciary capacities as they, without the exemption, would be required to give bond. On February 13th, 1933, the Circuit Court for Frederick County ordered a reargument of the steel company's petition, which was followed by its petition of February 28th, 1933, to rescind the order for reargument "because the opinion of this court of November 28th, 1931, was a final judgment * * * in the nature of a decretal order or final decree," which became enrolled after thirty days from its date. Code, art. 16, sec. 201.

The court, at the conclusion of its opinion, filed November 28th, 1931, expressly refrained from the passage of a formal order, and in the opinion of March 31st, 1933, after the reargument, concluding with a formal order dismissing the steel company's petition, it was said, "an order effectuating the opinion was postponed because it could have no practical utility so far in advance of any possible distribution"; and again, because of the opinion in *Frederick County Commrs. v. Page, supra,* "We ordered it reargued because no order

upon it had yet been passed"; and again, "No order having been passed to give effect to the opinion, we think the question discussed in it may be reconsidered." Compare *Thruston v. Devecmon,* 30 Md. 210, 216, where it was said of the order appealed from in that case: "It contained no reservation of equities, or power of further direction, but was final upon the rights of the parties, and could only be dealt with as a definitive decree." We regard the paper filed by the chancellors on November 28th, 1931, as an opinion expressing their views of the steel company's petitions and rights, on which they expressly refrained from passing an order. "An opinion, however positive, is not in any sense a final act; it is not the subject of appeal, and may always be changed before final decree." *Miller's Equity Proc.,* 325; *Id.,* pp. 309 and 380. The appeal from the order for reargument will therefore be affirmed.

Before the reargument, Anna D. Shank, as sole surviving trustee, filed her petition, wherein she alleged that under the second codicil to the will of her husband, Charles M. Shank, she and the Central Trust Company had been appointed trustees of a fund of $20,000, to be held by them for the use and benefit of Catharine F. Alexander, over which the Central Trust Company had assumed complete control from the time of Mr. Shank's death, when it came to them as executors. The executors had distributed to themselves as trustees the whole sum so to be held in trust, less the collateral inheritance tax of $1,000, and of the balance, amounting to $19,000, $2,100 had been invested, and the remaining $16,900 held in cash in its trust department as uninvested corpus of this estate, and so held at the time of the receivership created in these proceedings. The petition prayed that this "sum of $16,900 in cash, in the hands of the Central Trust Company of Maryland, Executor and Trustee, and in the hands of George W. Page, Receiver, be * * * allowed as a preferred claim" (under section 48, art. 11, of the Code). Control of the distribution had already been assumed by the trustees, as evidenced by the investment of part of it, and it

will therefore be treated as money in their possession as trustees.

The petition of the Frederick Iron & Steel Company was reargued, and with it the petition of Anna D. Shank argued, and it is from an order dismissing both petitions that this appeal is taken.

There is included in the record a stipulation that the Central Trust Company, at the time of its failure, was trustee in ninety-seven express voluntary trusts, thirty-three testamentary trusts, twelve court appointed trusts, two voluntary trusts over which the court had assumed jurisdiction, six estates of which it was executor or administrator, and twenty-four guardianships; that in its trust department corpus savings accounts there were 115 accounts aggregating $192,-434.88, at four per cent. interest, and in a non-interest-bearing uninvested corpus account twenty-one deposits amounting to $195,810.13, including an item of $186,000 involved in *Frederick County Commrs. v. Page, supra.* The total corpus of all the trusts being in excess of a million dollars. It was agreed that the Central Trust Company was insolvent on September 3rd, 1931, the day after it was closed.

It is apparent that the trusts alleged in the two petitions are dissimilar, one being a special deposit, and the other an express testamentary trust over which jurisdiction had not been assumed, but, as that difference in the character of petitioner's claims was not made at the argument or in the briefs, it will not be considered here. The question to be presented is whether the petitioners come within the provisions of section 48 of article 11 of the Code (Act of 1910, ch. 219, sec. 47), which excused trust companies from giving bond in all cases wherein but for that section bond would have been required.

The act of assembly, the construction of which is sought on this appeal (section 48, article 11, of the Code), is:

"(1) No bond or other security shall be required from any trust company for or in respect to any trust to which it shall be appointed executor, administrator,

guardian, trustee, receiver, committee or depositary by the order of any court.

"(2) In all cases in which such trust companies, whether incorporated under this article or by special act, shall be appointed, or shall be acting, as executor, administrator, guardian, trustee, receiver, committee, or in any other fiduciary capacity, they shall be responsible for losses of moneys or property received or held by them in any such character * * * and to the same extent as individuals so acting would be.

"(3) Upon the dissolution of any such company by the Legislature, court or otherwise, or in case of its insolvency, all debts or liabilities due or owing by such corporation in any of said fiduciary capacities, shall be preferred in the distribution of the assets of such company to all debts or liabilities of any nature whatsoever, including salaries and wages of employees and other preferred debts or liabilities.

"(4) The court having jurisdiction may make orders respecting such trusts, and require the corporation to render all accounts which such court or officer might lawfully require if such executor, administrator, guardian, trustee, receiver, committee or depositary were a natural person."

The question submitted on this appeal is not involved or complicated, being the single question of the applicability of section 48 of article 11 of the Code to voluntary trusts. The appellants' contention is that the section (48) gives them the statutory preference therein provided for, while the appellee contends that the preference extends only to executors and testamentary guardians and to fiduciaries appointed by a court.

The decision of the chancellors who heard the petition was influenced by the expressions of this court in the case of the *Frederick County Commrs. v. Page,* 163 Md. 619, 164 A. 182, 190, as indicating our view of the question now submitted for decision. The appellants argue that what was there said was *obiter,* and that this court expressly refrained

from deciding whether the exemption of trust companies from giving bond extended to express voluntary trusts. In that case the county commissioners had entered into a trust agreement with the Central Trust Company, whereby they undertook to deposit with it certain money which was to be used by the trust company for the redemption of bonds of Frederick County which were about to mature. It was held that the so-called trust agreement was one which the county commissioners were without authority to make, and for this reason an express trust was not created, but that one did arise *ex maleficio,* which entitled the commissioners to a preference against the assets of the company into which the fund so deposited might be traced, and that, in view of that conclusion, it became "unnecessary to decide whether Code, art. 11, sec. 48, extends its protection to express trusts, since the question is whether that protection embraces involuntary constructive trusts." The point urged by the appellant, the county commissioners, in that case, was that the act of the parties created a trust entitled to the protection of section 48, and it made no difference whether it was express, implied, resulting, constructive or in any of the fiduciary capacities named in the act. Code (Supp. 1929), art. 37A, sec. 1. When this court decided that the trust, the preference for which was sought, was not an express trust, it could not technically decide whether section 48 applied to express trusts; and then the question which confronted the court was whether it applied to constructive trusts, and it was decided that it did not. In arriving at this conclusion, the construction of the act was essential to a decision as to its applicability to the character of trust there found to exist, and it was in order for this court, in construing the section, to express its opinion as to the trusts to which it did apply, and then decide whether the trust so found to exist came within the trusts entitled to the protection of the statute then and now considered.

The part of the opinion in *Frederick County Commrs. v. Page,* written by Judge Offutt, to which the appellants refer as *obiter* and which the chancellors who decided the case, and

now the appellee, regarded as the opinion of this court as to the scope and meaning of section 48, is as follows: "The words 'said fiduciary capacities,' used in the last clause, can only refer to the fiduciary capacities specifically named in the first and second clauses, for they or like fiduciary capacities would be the only capacities in which a fiduciary would be required to give bond, and they would be the only cases in which beneficiaries injured by the wrongful acts of a fiduciary would be affected by the exemption of trust companies from the necessity of giving bond; and, even if the statute were held to include express voluntary trusts in which bonds might be required not only by the courts but by the parties, the reason for such a construction could not embrace trusts *ex maleficio,* which arise not from any agreement of the parties but by operation of law."

But disregarding this quotation as an expression of opinion of this court in the construction of a statute, the protection of which was sought so recently as in the *Frederick County Commrs. v. Page,* was it intended by the Legislature to apply to voluntary trusts, and thus give to such trusts the security to the prejudice of depositors which the statute provides? This is a situation which can only present itself when trust companies which are also banks of deposit go into insolvency. Ordinarily such claims are asserted against assets of a trustee into which the moneys of the trust estate may be traced, and the steel company's first petition had this end in view, but its second and Mrs. Shank's petitions sought an order or decree claiming a first lien, in common with others so situated, subject only to such lien as the State might have (*Public Indemnity Co. v. Page,* 161 Md. 239, 248, 156 A. 791), against all of the assets of the trust company. The burden of having such preference to the prejudice of those who would otherwise be entitled to take or share the fund or property is on the one making the claim. 21 C. J. 206, 207. In this case the right to a preference is controlled by section 48 of article 11 of the Code. If that statute does not give the petitioners a lien, with others similarly situated, against all of the assets of the bank, regardless of

their identity, their rights are only such as they might have by tracing their money into the assets of the trust company, a question not presented or argued, and therefore not to be considered on this appeal. The only question, then, is the construction of the statute with reference to the petitions of the appellants.

In construing a statute, the first duty of the court is to ascertain and to give effect to the intent of the lawmaking power, and according to 2 *Lewis' Sutherland, Statutory Construction* (2nd Ed.), sec. 366, this doctrine is "lucidly expressed" in *Alexander v. Worthington,* 5 Md. 471, 485, where it is said: "The language of a statute is its most natural expositor, and where the language is susceptible of a sensible interpretation, it is not to be controlled by any extraneous considerations. The construction is to be on the entire statute, and where one part is susceptible indifferently of two constructions, and the language of another part is clear and definite, and is consistent with one of the two constructions of which the former part of the statute is susceptible, and is opposed to the other construction, then we are to adopt that construction which will render all clauses of the statute harmonious, rather than that other construction, which will make one part contradictory to another." See *Clark v. Baltimore,* 29 Md. 277, 283; *Smith v. State,* 66 Md. 215, 217, 7 A. 49; *Purnell v. Shriver,* 125 Md. 266, 277, 93 A. 518.

In ascertaining the intent of the Legislature, "The practical inquiry is usually what a particular provision, clause or word means. To answer it one must proceed as he would with any other composition—construe it with reference to the leading idea or purpose of the whole instrument. A statute is passed as a whole and not in parts or sections and is animated by one general purpose and intent." 2 *Lewis' Sutherland, Stat. Constr.,* sec. 368; *State v. Stiefel,* 74 Md. 546, 22 A. 1.

This court has already and very recently, in *Frederick County Commrs. v. Page, supra,* expressed its opinion of the purpose of section 48 of the Banking Act, when it was said

by Judge Offutt: "The statute undertook to accomplish two things, first, to excuse trust companies from the necessity for giving bond as a natural fiduciary would be required to do; and, second, so far as possible to protect those entitled to rely upon the fidelity of such corporate fiduciaries from suffering loss through such exemption." While the appellants do not pretend to argue that this was not the general purpose of the statute, as expressed in the first sentence of section 48, they contend that the Legislature also intended to include voluntary trusts when it said in the second sentence: "In all cases in which such trust companies * * * shall be appointed, or *shall be acting* (italics ours), as executor, administrator, guardian, trustee, receiver, committee, or in any other fiduciary capacity, they shall be responsible for losses of moneys or property," etc. If this sentence stood alone, and could be interpreted without reference to the other provisions of the statute, we can see how such an interpretation might be given, but by its very terms it must be read in connection with the first sentence, which is the only one which excuses trust companies from giving bond in the fiduciary capacities in which, without legislative authority, they would be required to give bond. If it had been intended to give to beneficiaries of any trust, voluntary or court appointed, the protection of the statute, and give them a lien upon all of the assets of a banking trust company, there would have been no necessity to name the capacities to which the exemption, and consequent protection, would apply; a single sentence would have accomplished the legislative purpose.

Many of the provisions of section 48 were copied verbatim from section 190 of the Banking Laws of New York (Consol. Laws N. Y., 1909, c. 2). The first sentence of the section 190 provided that "no bond or other security, except as hereinafter provided (the exception being a depository of public funds), shall be required from any such corporation for or in respect to any trust, nor when appointed executor, administrator, guardian, trustee, receiver, committee or deposi-

tary." The second sentence of the New York statute provided that such fiduciaries, "in either of such characters," would be responsible for investments unless they "are such as the courts recognize as proper when made by an individual acting as trustee, executor, administrator, guardian, receiver, committee or depositary, or such as are permitted in and by the instrument or words creating or defining the trust." This statute came up for construction in *Madison Trust Co. v. Carnegie Trust Co.*, 215 N. Y. 475, 109 N. E. 580, 583, on an appeal from the Appellate Division (167 App. Div. 4, 152 N. Y. S. 517), which had denied the preference to a voluntary trust, and which was affirmed by the Court of Appeals. It was there said: "It is claimed that to limit the language of section 190 to trustees judicially appointed or those specifically mentioned in the statute fails to give effect to the phrase 'for or in respect to any trust,' and the words at the end of the second sentence 'such as are permitted in and by the instrument or words creating or defining the trust.' These general expressions, detached from their context, do not reveal the purpose of the statute as a whole."

It was also urged in the New York case that amongst those "appointed" were executors, who did not derive their authority by appointment from a court, and that this evinced an intention to extend the statute beyond judicially appointed fiduciaries. The court, on the contrary, regarded this as evidence of the intention of the Legislature to so limit its extension beyond judicially appointed fiduciaries, and the same observation might be made here, where it has been expressly held "that the title and rights of the executor are created by the will and not by the probate." *Decker v. Fahrenholtz,* 107 Md. 515, 520, 68 A. 1048, 1050, 72 A. 339.

If there is any doubt about the limitation to be put on the application of the statute, it seems to us to be removed and set at rest by its fourth and last sentence. In construing a statute "It is a well recognized canon of interpretation, that if any part of a statute be intricate, obscure or doubtful, the proper way to discover the intent, is to consider the other

parts of the act; for the words and meaning of one part of a statute frequently lead to the sense of another, and in the construction of part of a statute, every other part ought to be taken into consideration. *Dwarris on Stat.*, 697." *Magruder v. Carroll*, 4 Md. 335, 348. What is the meaning of the last sentence in relation to the preceding provisions of the statute? It says "The court having jurisdiction may make orders respecting such trusts, and require the corporation to render all accounts which such court or officer might lawfully require if such executor, administrator, guardian, trustee, receiver, committee or depositary were a natural person." Article 11, sec. 48. It requires no citation of authority to say that no court or officer can require any trustee or other fiduciary to render an account unless it has appointed him or it has otherwise acquired jurisdiction, nor can a court of its own motion assume such control or direction of the trust. The statute, in declaring that "the court having jurisdiction may make orders respecting such trusts," can only refer to and mean such trusts as were theretofore embraced in the preceding portions of the statute, and so confines its application to such trusts as were therein mentioned as, without the statutory exemption, would be required to give bond, and so excludes from its operation and purpose those fiduciaries not "appointed" as provided by the first sentence of the statute.

The decision, then, in the instant case is that the petitioners are not entitled to the preferences claimed by them under the provision of section 48 of article 11 of the Code, and we therefore concur in the dismissal of their petitions.

*Order affirmed, with costs.*