[No. 4407.    Decided September 10, 1903.]

SAMISH RIVER BOOM COMPANY v. UNION BOOM COM-
PANY.

EMINENT DOMAIN. — APPROPRIATION BY ONE CORPORATION OF PROP-
ERTY OF ANOTHER.

Property held by a corporation, even though actually devoted
to a public use, may be taken for a public use by another corpo-
ration having the right of eminent domain, provided it is not
taken to be used for the same purpose and in the same manner.

SAME — GRANT OF POWER — HOW DETERMINED.

The power of a corporation to take lands already devoted to a
public use cannot be presumed simply from a general grant of
power to condemn, but must be given either in express terms or
by necessary implication.

SAME — BOOM COMPANIES — RIGHT TO CONDEMN PROPERTY.

·Bal. Code, § 4379, which requires a boom company, after filing
its articles of incorporation, to file with the secretary of state
within ninety days thereafter "a plat of survey of so much of the
shore lines of the waters of the state and lands contiguous there-
to" as it proposes to appropriate for its corporate purposes, is a
grant, by necessary implication, of the power of selecting the
designated location by condemnation or otherwise.

SAME — RIGHT NOT AFFECTED BY PRIOR TRESPASS.

The fact that a boom company took possession of lands be-
longing to the state and used them for boom purposes before
acquiring any right thereto, would not affect its power to con-
demn the same when subsequently sold by the state to another
boom company, when the latter had never been in actual pos-
session of the land so as to be able to use it for boom purposes.

SAME — BAD FAITH.

The fact that the company thereafter extended its boom works
further down the river than as at first located would not show
such bad faith as to affect its right of condemnation.

SAME — NECESSITY FOR TAKING — WHAT CONSTITUTES.

The "necessity" required to be shown for the appropriation of
private property does not mean an absolute and unconditional
necessity as determined by physical causes, but a reasonable nec-
essity under the circumstances of the particular case.

SAME — CONTESTANTS FOR SAME LOCATION — PRIORITIES.

Where different corporations desire the same location, the one that is prior in point of time is also prior in point of right, and the first location, if followed by construction, operates to secure the prior right.

*Original Application for Certiorari.*

*Million & Houser,* for petitioner:

The evidence in this case shows that there are abundant and ample facilities for boom works besides the particular tract occupied by the petitioner. The testimony disputing this shows that it is simply a matter of convenience or economy with respondent and not a case of necessity recognized by the law. *Appeal of Sharon Railway,* 17 Atl. 234; *Union Terminal R. R. Co. v. K. C. Belt Ry. Co.,* 60 Pac. 541; *Barre Ry. Co. v. Montpelier & W. R. R. Co.,* 17 Atl. 923. It is unquestionably the law that one corporation cannot condemn the property in use by another for the same purpose, but property not in use nor absolutely necessary to the enjoyment of the franchise may be condemned by another company of the same character. *Baltimore & O. S. W. Ry. Co. v. Board of Comr's,* 58 N. E. 837; *In re Rochester Water Com'rs,* 66 N. Y. 413; *Morris & E. R. R. Co. v. Central R. R. Co.,* 31 N. J. Law, 213; *In re New York, L. & W. R. R. Co.,* 99 N. Y. 13 (1 N. E. 27);*Eastern R. R. Co. v. Boston & M. Railroad,* 111 Mass. 125;*Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. R. R. Co.,* 35 Mich. 265; *Peoria, P. & J. R. R. Co. v. Peoria & S. R. R. Co.,* 66 Ill. 174; *North Carolina & R. & D. R. R. Co. v. Carolina Cent. Ry. Co.,* 83 N. C. 489;*Wheeling Bridge Co. v. Wheeling & Belmont Bridge Co.,* 34 W. Va. 155. Mere priority of acquisition gives no exclusive right, except in so far as the condemnation trenches upon the fixed

necessities of the other franchise. *East St. Louis Con. Ry. Co. v. East St. Louis Union Ry. Co.,* 108 Ill. 265; *Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. R. Co.,* 97 Ill. 506. The rights of prior occupation cannot be divested by a rival corporation either by purchase or condemnation. *Union Terminal R. R. Co. v. Kansas City Belt Ry. Co.,* 60 Pac. 541; *Sioux City R. R. Co. v. C. M. & St. P. Ry.,* 27 Fed. 770. The rule of the greater necessity does not apply to property actually in use and occupied by a corporation in the same business as that of the company seeking to obtain possession by virtue of purchase or condemnation, as we have already seen. The respondent having purchased land already in use by another corporation, acquired no rights of possession therein on the ground of its public necessity under its franchise. *Scranton Gas & Water Co. v. Northern Coal & Iron Co.,* 192 Pa. St. 80; *St. Louis, H. & K. C. Ry. Co. v. Hannibal Union Depot Co.,* 28 S. W. 483; *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co.,* 41 Pac. 232 (31 L. R. A. 298); *Appeal of Sharon Railway,* 17 Atl. 234; *Barre Ry. Co. v. Montpelier & W. R. R. Co.,* 17 Atl. 923. Conceding for the sake of argument that petitioner was technically a tresspasser as against the state, we have already seen that the liabilities which attach to an ordinary case of trespass do not apply to a corporation seeking to condemn property already reduced to its possession and devoted to public utilities under its franchise. As further supporting the above proposition see: *Searl v. School District,* 133 U. S. 564 (33 L. ed. 740); *Cory v. Chicago, B. & K. C. Ry. Co.,* 100 Mo. 292 (13 S. W. 348); *State ex rel. Moody v. Jacksonville, etc., R. R. Co.,* 20 Fla. 649; *Toledo, etc., Ry. Co. v. Dunlap,* 47 Mich. 456. But whatever petitioner's possession may have been as between it

and the state, respondent did not acquire the power of confiscation by virtue of its purchase. It is not in a position to raise the question.

*Elihu R. Sherman,* for respondent:

One company cannot condemn franchises and property of another for the same purpose, except that portion not in use or not necessary for the exercise of its franchise, · unless that right is expressly given by the statute: *Appeal of Sharon Ry. Co.,* 9 Am. St. Rep. 137; *Lake Erie & W. R. R. Co. v. Seneca County,* 57 Fed. 945; *State v. Paterson,* 39 Atl. 680; *Lake Shore & M. S. Ry. Co. v. New York, C. & St. L. Ry. Co.,* 8 Fed. 858; *Contra Costa R. R. Co. v. Moss,* 23 Cal. 323. Here the property is not in use by respondent but it is necessary to the purposes of respondent and would have been used by it had it not been kept out of possession by petitioner. Authority given in general terms is not sufficient to authorize the taking, for an inconsistent use, of property already devoted to a public use. 9 Am. St. Rep., notes on pp. 142-143; *Louisville & N. Ry. Co. v. Whitley County Court,* 44 Am. St. Rep. 220; *Oregon Cascade Ry. Co. v. Baily,* 3 Ore. 164; *Eastern Ry. Co. v. Boston & Maine Ry. Co.,* 15 Am. Rep. 18; *City Council of Augusta v. Georgia R. R. & Banking Co.,* 26 S. E. 499; *Little Nestucca Road Co. v. Tillamook County,* 31 Ore. 1. In this state no right is given by statute to one company to condemn the property of another company having the right of eminent domain. Even where the right to condemn property of another corporation is given by statute, it must be shown that the public use to which the property is to be devoted is more necessary. *Butte Ry. Co. v. Montana Union Ry. Co.,* 41 Pac. 232 (31 L. R. A. 298). In the present case there is no

showing of greater necessity by the petitioner. The use to which the property will be devoted is the same whether petitioner or respondent owns the land. The public will be as well served by respondent as by petitioner. And to warrant the taking of property already devoted to public use, it is essential that the new use be a different use. *East St. Louis Con. Ry. Co. v. East St. Louis Union Ry. Co.*, 108 Ill. 265 ; *Lake Shore & M. S. Ry. Co. v. Chicago & W. I. R. R. Co.*, 97 Ill. 506 ; *Chicago & N. W. Ry. Co. v. Chicago & E. R. R. Co.*, 112 Ill. 589. If this is allowed as recited in the opinion of the court in *In re N. Y., L. & W. R. R. Co.*, 99 N. Y. 23, this evil would result: A corporation (No. 1) having the right of eminent domain takes land from a similar corporation (No. 2) having the same right; No. 2 thereupon proceeds to condemn it for its own use, and No. 1 retaliates and so the absurd process goes on. The necessity must arise out of the nature of things itself and must not be created by the company seeking the appropriation for the sake of convenience or economy, and the necessity cannot override the real necessities of the respondent corporation. *Appeal of Sharon Ry. Co.*, 9 Am. St. Rep. 135 ; *Appeal of Pittsburgh Junction R. R. Co.*, 9 Am. St. Rep. 128 ;*Lake Shore & M. S. Ry. Co. v. New York, C. & St. L. Ry. Co.*, 8 Fed. 858 ; *St. Louis, H. & K. C. Ry. Co. v. Hannibal Union Depot Co.*, 28 S. W. 485. But the main proposition involved in this case is that even if priority of location and occupation give priority of right, it can only be where they are made for the express purpose of securing a permanent right. The possession and occupation must be lawful. A company in possession adversely or as licensee cannot thereby predicate any right from its priority. *Minneapolis & St. L. Ry. Co. v. Minneapolis Western Ry. Co.*, 63 N. W. 1035.

The opinion of the court was delivered by

ANDERS, J.—This is an application for a writ of certiorari to review the judgment of the superior court of Skagit county dismissing the petition of the Samish River Boom Company to condemn certain lands situate at or near the mouth of the Samish river, in said county. The sufficiency of the petition is not questioned. It is in form and substance the usual petition in condemnation cases with the additional allegation that the petitioner is, and for a long time has been, in possession of and using the lands therein mentioned for booming purposes. The respondent answered, denying the right and the necessity of condemnation, and alleging, in substance, that it purchased the land in controversy from the state of Washington for booming purposes, that the possession of petitioner was illegal and adverse, that the petitioner was estopped by its conduct from claiming the right of a condemnor, and that respondent would have used the lands in question for booming purposes had it not been kept out of possession of the same by petitioner. After hearing and considering the testimony introduced by the respective parties, the court denied the right of the petitioner to condemn the lands described in the petition, refused "to call a jury to assess the compensation and damages to the respondent for appropriating such property," and dismissed the petition at the cost of petitioner. The petitioner thereupon appealed to this court, but the appeal was dismissed on the ground that the order of the court refusing to call a jury was not reviewable by appeal.

The petitioner, Samish River Boom Company, was organized and incorporated as a boom company on March 13, 1900, under laws of this state relating to the organization, management, and control of such companies; and,

within ninety days after filing its articles of incorporation, it filed in the office of the secretary of state a plat or survey of so much of the shore line of the waters of the state, and lands contiguous thereto, as it proposed to appropriate for booming purposes. Ever since the incorporation, the petitioner has been doing business as a boom company on the Samish river, and the evidence shows that it handled about 20,000,000 feet of timber products during the year 1901. Its appliances for holding, sorting, and rafting logs are located partly on tide lands on the north side of the river, and extend up from the mouth of the stream about 6,000 feet. It is this strip of land, said to contain about fourteen acres, that petitioner seeks to condemn. The respondent was organized as a boom company under the laws of this state on or about March 13, 1901. Its articles of incorporation and its plat or survey of appropriation were duly filed, but it has done no business as a boom company at any time since its organization. At the time the respondent was incorporated, the petitioner, as we have already said, was, and ever since has been, in possession of the land in question, and using it in the prosecution of its corporate business; but the land itself, being tide land, originally belonged to the state. On May 23, 1901, the respondent purchased from the state a large tract of tide land, part of which lies on the south and the remainder on the north shore line of Samish river, and includes the strip of land occupied by the boomworks of the petitioner. It also appears from the evidence that the south shore line of the river and the north shore line not occupied by the petitioner, as well as the tide lands at the mouth of the river, are unoccupied; and, according to the testimony of a witness for the petitioner, who had been engaged in the logging business on Samish river both be-

fore and since the incorporation of petitioner, the south side of the river is also available for booming purposes. One of the officers of the respondent company testifies that there are more tide lands on the south side of the river than on the north, but they are shallower (that is, the water is not so deep when the tide is in); that there would be plenty of room for a boom in width, but not in depth, and that logs could not be handled there on account of sand bars in the river; that it was the intention of respondent when it purchased the tide land to utilize 6,000 feet or more on the north side of the river by catching, booming, and rafting logs; that the object in buying on both sides of the river was to regulate the passage there so that the respondent would not be interfered with by constant suits for interrupting navigation, and for the purpose of storing logs or shingle bolts in case they came down; and that its rights would be destroyed by the taking of this land by petitioner.

Our statutes authorize the incorporation of boom companies, and prescribe their powers and duties. They have power to acquire and hold, by lease or purchase, and to use and transfer, all such property as shall be necessary for carrying on the business of such corporations. They also have the right to appropriate land, shore rights, and other property necessary for corporate purposes whenever they are unable to agree with the owners of the same as to the amount of compensation to be paid therefor, and such compensation may be assessed and determined and the appropriation made in the manner provided by law for the appropriation of private property by railways. Bal. Code, § 4378. It was the duty of the superior court, under our statute relating to eminent domain, at the preliminary hearing of the petition, to direct the sheriff to

38-32 WASH.

summon a jury to assess the damages which would result
to the respondent by reason of the appropriation and use
of the land described in the petition, if there was satisfac-
tory proof (1) that the respondent had been duly served
with the prescribed notice; (2) that the contemplated use
for which this tide or shore land is sought to be appro-
priated is really a public use; and (3) that the prop-
erty sought to be appropriated is required and necessary
for the purposes of petitioner's enterprise.    Bal. Code,
§ 5640.    It is not claimed that any party interested in
this land was not served with notice of the hearing of the
petition, or that the contemplated use for which the land
is sought to be appropriated is not a public use.    The re-
spondent was represented by counsel at the hearing, and
testimony was given in its behalf; and the proof, we think,
shows beyond question that the "contemplated use" is a
public one.    And whether the learned judge, in denying
petitioner's request for a jury to assess respondent's dam-
ages, proceeded upon the theory that the evidence failed
to establish a necessity for the proposed appropriation,
is not disclosed by the record.    It seems, however, to be
understood by counsel for petitioner that the ruling of
the court "was based on the theory that one corporation
cannot condemn the property of another corporation of
like character, to be used for like purposes."    And if the
decision of the court was in fact founded on such theory,
it was laboring under a misconception of the law appli-
cable to cases of this character, as we understand it.    The
power to take private property for public use is one of
the recognized powers of sovereignty, and is inherent
in the state.    It is a power recognized, but not granted, by
the constitution.    Mills, Eminent Domain, § 1; *Lake Shore
& M. S. Ry. Co. v. Chicago & W. I. R. R. Co.,* 97 Ill. 506.
The right to determine under what circumstances and to

what extent that power may be exercised, and to provide
the manner of its exercise, is vested exclusively in the leg-
islature.    *Lake Shore, etc., Ry. Co. v. Railroad Co.,
supra;* Mills, Eminent Domain, § 11.    And that the legis-
lature never intended that property owned by a corpora-
tion should, merely by reason of such ownership, be ex-
empt from appropriation under the law of eminent do-
main, is evident from the fact that, in prescribing the
mode of procedure in condemnation proceedings, it pro-
vided the manner of serving corporations, as well as indi-
viduals, with notice of the time when and the place where
the petition will be presented to the court.    Bal. Code,
§ 5638.    Moreover, the constitution of the state clearly
recognizes the power of the legislature to authorize the
taking of the property of private corporations for public
use, for it expressly provides that "the exercise of the
right of eminent domain shall never be so abridged or con-
strued as to prevent the legislature from taking the prop-
erty and franchises of incorporated companies and sub-
jecting them to public use the same as the property of indi-
viduals."    Constitution, art. 12, § 10.    There can be no
doubt that property held by a corporation simply as a
proprietor may be taken for public use by another cor-
poration having the right of eminent domain.    And even
property actually devoted to public use is still subject to
the power of eminent domain, except that "it cannot be
taken to be used for the same purpose in the same man-
ner," as that would amount simply to a taking of property
from one and giving it to another, without any benefit or
advantage whatever to the public—an act which the legis-
lature is powerless to authorize.    Lewis, Eminent Do-
main (2d ed.), § 276; *Lake Shore, etc., Co. v. Railroad
Co., supra.*

But while it is true that the state has power to delegate to corporations the right to take property for public use which has already been appropriated to such use, subject to the qualification above noted, yet the right to take property already devoted to and in public use must be given either in express terms or by necessary implication, and will not be presumed simply from a general grant of power to condemn.    Lewis, Eminent Domain (2d ed.), § 276, and cases cited; Thompson, Corporations, § 5619. This doctrine is invoked by counsel for the respondent in support of the ruling of the court below, and it is argued that the shore lands in question cannot be taken for use of petitioner, for the reason that in this state no right is given by statute to one company to condemn the property of another company having the right of eminent domain. It is also asserted on behalf of the respondent that "in this case the condemnation would devote the property to identically the same use as the owner has already devoted it, and would simply be a change of ownership, and condemnation should never be allowed for this purpose alone." But we are unable to accept these propositions as strictly correct in point of fact.    We have hereinbefore endeavored to show that, under our law of eminent domain, property held or owned by a corporation, and not actually devoted to public use, may be taken by another corporation having the right to condemn private property.    And in our judgment no valid reason could be given why such should not be the law.    It appears clear to us that a contrary conclusion must, of necessity, be based on the fallacious and unwarranted assumption that the mere property of a corporation is held by a more stable and sacred tenure than that of a natural person.    The property of a corporation is, in one sense, private property, and, as such, it is subject to taxation, and may be taken on execution in payment of

corporate debts. But the public may have such an interest in the use, in a particular manner, of the property of one corporation, as will prevent another corporation from taking it by condemnation for the same use in the same way. It is admitted that the respondent is not using and has not used the land in dispute for corporate purposes, and it would therefore seem to follow that if it has, as it claims, devoted it to public use, it has done so simply by properly filing its articles of incorporation and its plat or map of appropriation, with the intention of thereafter using it for the purposes of its business. But if it be true that those acts and that intention constituted an appropriation of the property to public use by the respondent, it must also be true that like acts and a like intention on the part of the petitioner would have a like effect; and therefore the argument on behalf of the respondent, based on the above mentioned acts, is equally as forceful in favor of the petitioner. At the time these corporations filed their respective plats, neither of them was the owner of the tide lands described therein; but the petitioner proceeded at once, by the tacit consent, or at least by the sufferance, of the state, to erect its boomworks in and adjacent to the river, where it has ever since performed the functions of a boom company in accordance with its franchise. It thus appears that these premises were practically appropriated to public use by the petitioner some time before the respondent was incorporated, and consequently before it was entitled to the rights and privileges of a boom company on Samish river. After the petitioner had organized and filed its articles of incorporation, it became its duty to file with the secretary of state, within ninety days thereafter "a plat or survey of so much of the shore lines of the waters of the state and lands contiguous thereto" as it proposed to

appropriate for its corporate purposes. Bal. Code, § 4379. And by requiring the petitioner to make and file such plat the legislature, by necessary implication, granted it the privilege of selecting the location designated therein. It is true, petitioner did not perfect absolutely its right to occupy the lands it seeks to condemn by leasing or paying therefor before it took possession; but that was a matter of no concern to the respondent, prior to the time it became the purchaser thereof. Boom companies are organizations of a peculiar character. Their operations are necessarily restricted to the "waters of the state," and in some cases to a particular river or stream. But they certainly have as much discretion in selecting the location of their works as other corporations have, which have been given the right to exercise the power of eminent domain. And where such discretion is exercised in good faith by a corporation desiring to condemn land, it is generally held that it will not be interfered with by the courts. 10 Am. & Eng. Enc. Law (2d ed.), p. 1057, and cases cited.

It seems to be claimed, however, by respondent, that the fact that the petitioner has extended its works further down the river than they were at first is evidence of bad faith on its part. But we are of the opinion that that fact is not sufficient to establish bad faith, unless we concede—which we do not—that petitioner had no discretion whatever in the matter of selecting the location of its business. It is evident that, if the petitioner is entitled to any benefits or privileges at all by virtue of its franchise, it has at least the right to place the necessary appliances and to carry on its business, if practicable, in and on the Samish river (a part of the navigable waters of the state), without paying any one for such privilege. Of course, the state did not attempt to sell the water flowing in the river, or the land covered by it, and the respondent does not claim

to be the owner of either. It is, as we have seen, only certain shore lands that are here in controversy; and the question is whether the petitioner, on payment of a just compensation to the owner, may appropriate the premises for the purposes of its business as a boom company. It undoubtedly has the right to exercise the power of eminent domain, for that right was expressly delegated to it by the legislature. And the question whether a corporation having the power to condemn lands is authorized by our law of eminent domain to appropriate the property of another corporation which had already been devoted to public purposes was considered by this court in the recent case of *Seattle & M. R. R. Co. v. Bellingham Bay & E. R. R. Co.*, 29 Wash. 491 (69 Pac. 1107). In that case the Bellingham Bay & Eastern Railroad Company sought to condemn for its use as a right of way certain tide lands in front of the city of Fairhaven, owned by the Seattle & Montana Railroad Company. It appeared that the last-named company had purchased a larger tract of tide lands than it required for corporate purposes, and that it subsequently sold several parcels thereof for private purposes. It, however, reserved a strip 100 feet wide for its right of way. At the time of the hearing of the petition for condemnation it appeared that the Seattle & Montana Railroad Company had constructed only two spurs on this reservation, for trackage purposes, in connection with its station; but the proof tended to show that it contemplated the construction of at least four tracks thereon, and that it intended to construct them immediately. It was urged as a defense to the condemnation proceedings, as it is here, that the property sought to be appropriated was already devoted to public use, and therefore was not subject to be taken for another use of like nature. But the trial court

concluded that the premises in question were subject to condemnation by the petitioner, and this court, after a careful consideration of our statutes and numerous decisions of other courts, affirmed the judgment. And in the course of the opinion we said:

"But the general rule maintained by the petitioner [for a writ of review], and the authorities supporting the same, is not so applied as to prevent one railroad from taking the property which is not in use for railroad purposes, and not necessary for the corporate franchises. "  ·

Some of the leading cases were there reviewed and quoted from, and we are fully satisfied with that decision. Among other cases announcing the same doctrine, and not specifically referred to in that opinion, is that of *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co.,* 16 Mont. 504 (41 Pac. 232, 31 L. R. A. 298, 50 Am. St. Rep. 508), in which the question under consideration is ably and elaborately discussed by the supreme court of Montana.

It is further contended by the respondent that the petitioner has not in this instance shown any necessity for the taking of the particular lands which it seeks to appropriate, as it appears that there is other land available, although perhaps not so convenient for its purposes, and it is argued that the mere matter of convenience cannot be considered. It is true that the petitioner cannot condemn this property in the absence of any necessity therefor. But the word "necessity," as used in the statute, "does not mean an absolute and unconditional necessity, as determined by physical causes, but a reasonable necessity, under the circumstances of the particular case, dependent upon the practicability of another route [here another location], considered in connection with the relative cost to one, and probable injury to the other." *Mobile & G. R. R. Co. v. Alabama M. Ry. Co.,* 87 Ala. 508 (6 South. 406), cited

and approved in *Seattle, etc., R. R. Co. v. Bellingham Bay, etc., R. R. Co., supra.* Another learned court states the rule as follows:

"It may be observed generally that 'necessary,' in this connection, does not mean an absolute or indispensable necessity, but reasonable, requisite, and proper for the accomplishment of the end in view, under the particular circumstances of the case." *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., supra.*

"It is not a question whether there is other land to be had that is equally available, but the question is whether the land sought is needed for the construction of the public work." *Postal Tel., etc., Co. v. Oregon Short Line R. R. Co.,* 23 Utah, 474 (65 Pac. 735); 10 Am. & Eng. Enc. Law (2d ed.), pp. 1057-8.

We think that, upon the facts and circumstances appearing in the case, the petitioner has shown a "reasonable" necessity for the condemnation of the land it seeks to appropriate. If, as respondent suggests, it would have been equally as convenient for petitioner to have selected some other place of business in the first instance, why may not the respondent now select, without special inconvenience, some other location for its business? It is evident that both of these corporations cannot carry on their corporate business at the same place at the same time. Both of them desire the same location, and in such cases the following is said to be the rule:

"When different corporations desire the same location, the one that is prior in point of time is also prior in point of right, and the first location, if followed by construction, operates to secure the prior right." Mills, Eminent Domain (2d ed.), § 47.

It is contended, however, by the respondent, that, even if priority of location and occupation give priority of right, it can only be where they are made for the express pur-

pose of securing a permanent right; that the possession and occupation must be lawful; and that a company in possession adversely or as licensee cannot predicate any right on its priority; and *Minneapolis & St. L. Ry. Co. v. Minneapolis W. Ry. Co.,* 61 Minn. 502 (63 N. W. 1035), is cited in support of its contention. It appeared in that case that the plaintiff company had, with the consent of the owner, entered upon a so-called 33-foot strip of land, and constructed side tracks extending to certain mills and elevators owned by the Minneapolis Mill Company. It had used these tracks, together with certain extensions known as "trestle tracks," in its transportation business, for a considerable number of years, when the mill company sold the 33-foot strip and the trestle tracks, and the land on which they were situated, to the defendant company. The trestle tracks were built and owned by the mill company. After the Minneapolis Western Railway Company purchased the premises, it demanded possession of the same, which was refused, and it thereupon brought an action of ejectment to recover the possession of the 33-foot strip. Upon the trial the court found in favor of the plaintiff, and the judgment was affirmed by the supreme court. The defendant in the ejectment suit then sought to have the 33-foot strip and the trestle tracks condemned for its right of way. The trial court held that the plaintiff had not, under the laws of the state (Minnesota), the right to condemn the property, and the supreme court affirmed the ruling. It seems that the learned court was of the opinion in that case that the defendant company, which already owned and operated a line of railroad, desired and needed the land there in question for railroad purposes, and that the public use to which the plaintiff proposed to devote the premises was "identical with" that "already en-

joyed." And upon that state of facts the decision of the court was fully warranted by well-established principles of law, and for that reason is not, in our judgment, open to criticism. But we are not prepared to assent to the broad doctrine contended for by counsel for respondent, and apparently justified by some of the expressions of the court in that case, that a railroad company possessing the powers of eminent domain will be deprived of the right to exercise that power by reason of the fact that it has occupied and used the premises it desires to continue to use, under a revocable license from the owner, and without attempting to condemn the property until after the owner has sold it to another railroad company. It is doubtless true that a "claim of right to condemn" cannot be predicated solely upon wrongful possession, but it is also true that the right itself is not extinguished by such possession. The right to condemn property for public use is essentially a creature of the statute, and, when once given, can be taken away or destroyed, if at all, only by legislative enactment. But one corporation has no right to appropriate a particular tract of land owned by another corporation, and which has already been appropriated to public use, and is necessary for the corporate purposes of such owner. The right to condemn in any particular case will therefore depend upon the facts and circumstances appearing therein. And hence the decision in the Minnesota case on which counsel for the respondent so confidently relies must be read in the light of the facts before the court, and, when it is so read, we think it fails to support his contention. There the petitioner took possession of the land it sought to condemn, under a parol license which was subject to be revoked at any moment, without manifesting any desire or intention to secure permanent possession and occupancy

of the same; and these facts seem to have been deemed
material by the court.   Here the petitioner has at all times
since its organization shown an intention to hold perma-
nent possession of these lands.   It claimed the right to
occupy and use the premises, in the exercise of its fran-
chise, as against the state itself, and even went so far as
to attempt to enjoin the state land commissioner from ex-
ecuting the contract of sale to the respondent, under which
it claims title to the premises.   See *Samish Boom Co. v.
Callvert*, 27 Wash. 611 (68 Pac. 367).   But the most ma-
terial facts found in the Minnesota case, as we understand
it, which do not appear in the case at bar, have already
been mentioned.   They are these:   The property there
sought to be taken had already been devoted to railroad
purposes by the defendant, and was necessary to the enjoy-
ment of its franchise.   And in view of such facts the rul-
ing was certainly correct, regardless of all other matters
of fact stated in the opinion of the court.   Conceding that
the petitioner in this case was technically a trespasser, by
reason of the fact that it took and held possession of the
land before it acquired any title or right thereto or therein
by condemnation proceedings or otherwise, still it is not
thereby precluded from resorting to the remedy given it
by statute for the acquisition of the lands for corporate
purposes and for public use.   By thus prematurely enter-
ing upon the premises and excluding the owner therefrom,
the petitioner rendered itself liable to an action of trespass
or ejectment by the owner, but it did not forfeit the right
with which it was clothed by the state to pursue the remedy
by which its possession may be rendered rightful, and by
which lawful title may be acquired. *Jones v. New Orleans
& S. R. R. Co.*, 70 Ala. 227; *Secombe v. Railroad Co.*,
23 Wall. 108; *Justice v. Nesquehoning Valley R. R. Co.*,

87 Pa. St. 28; *Oregon Ry. & N. Co. v. Mosher*, 14 Ore. 523 (13 Pac. 302, 58 Am. Rep. 321); *Lyon v. Green Bay & M. Ry. Co.*, 42 Wis. 538. See, also, *Seattle & Montana R. R. Co. v. Corbett*, 22 Wash. 189 (60 Pac. 127); *Bellingham Bay & B. C. R. R. Co. v. Strand*, 14 Wash. 144 (44 Pac. 140).

It is conceded in the brief of counsel for the respondent that the petitioner has pursued the proper remedy in this instance, and we have therefore treated the application for the writ of certiorari as granted, and have directed our attention solely to the merits of the case presented by the record. And our conclusion is that the petitioner is entitled, under the law and the evidence, to the relief demanded. The order and judgment of the court below are therefore reversed, and the cause remanded, with directions to cause a jury to be summoned to ascertain and assess the damages which will result to the respondent by reason of the appropriation by petitioner of the lands described in the petition.

FULLERTON, C. J., and MOUNT and DUNBAR, JJ., concur.