[No. 14671. Department Two. May 9, 1918.]

THE STATE OF WASHINGTON, *on the Relation of Charles E. Patterson et al., Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY *et al., Respondents.*[1]

EMINENT DOMAIN—PURPOSES—"DOCKS." Rem. Code, § 8740, empowering a railway company to condemn lands for "docks" and warehouses, authorizes the condemnation of sufficient ground for excavating a slip or waterway adjoining a proposed wharf; "dock" meaning an artificial basin for vessels or the space between two adjoining piers or wharves.

SAME—"NECESSITY"—EVIDENCE—SUFFICIENCY. A reasonable "necessity" within Rem. Code, § 925, is shown for the condemnation for a dock by a railroad company, where it appears that its business has grown to an extent requiring the facilities, and that still greater facilities will be required, although the company owns other property suitable, but less convenient, for the purpose which would not answer all the purposes sought.

MUNICIPAL CORPORATIONS — STREETS — VACATION — TIDE LANDS — STATUTES. Under Rem. Code, § 7842, providing that the property within the limits of a vacated street shall revert to the abutting owners, one-half to each, where a vacated street intersected the land platted diagonally, forming triangular shaped lots, the abutting owner's lines should be extended in straight lines to the center of the vacated street; and the same rule applies whether the lots be tide lands or uplands.

EMINENT DOMAIN—PETITION—DESCRIPTION OF LANDS—SUFFICIENCY. In condemnation proceedings which include portions of a vacated street that had reverted to abutting owners, a petition is insufficient

[1]Reported in 173 Pac. 186.

where it contains only a general description of all the abutter's interests in the vacated street, in view of Rem. Code, § 921, providing that the property sought to be condemned must be described with reasonable certainty.

Application filed in the supreme court February 1, 1918, for a writ of certiorari to review an order of the superior court for King county, Ronald, J., adjudging a public use and necessity in condemnation proceedings. Granted.

*Hughes, McMicken, Ramsey & Rupp,* for relators.
*F. G. Dorety* and *R. J. Hagman,* for respondents.

HOLCOMB, J.—This is a proceeding to review an order of the superior court adjudicating a public use and necessity in condemnation proceedings; and the relators also seek to review the refusal of the trial court to order the description of the lands sought to be appropriated to be made more definite and certain.

The original action was brought by the Great Northern Railway Company to condemn certain tide land property of the relators in Seattle, Washington, for the purpose of erecting a wharf and excavating a slip or dock adjoining the same for use in docking steamships and loading and unloading freight on and from freight cars of the railway company. A motion to make the description of the property to be condemned, as set forth in the condemnation petition, more definite and certain was first granted and then denied by the court below.

The proposed improvement consists of a wharf about 1,800 feet long and 150 feet wide, extending out from Railroad avenue in what is known as Smith's Cove, in Puget Sound, with a dredged dock or slip 120 feet in width along the easterly side of it where ships can berth or dock. It will run along the easterly side of and immediately adjoining the present Smith's Cove

wharf of the railway company. These wharves are used for transshipping export freight from the cars to steamers, and also import freight from steamers to freight cars. The present wharves are alleged to be inadequate for such purpose, and the company is now compelled to use outside wharves and to pile freight higher than is convenient upon the present wharf. The congestion makes it necessary at the present time to hold hundreds of cars continuously for lack of place to unload them; and, also, the company has not room to dock all the boats that wish to load there at one time. This is due to a continuous increase of business during the last few years, the increase during the last year being shown to have been about fifty per cent. The present wharf will accommodate three boats, whereas place for from four to eight boats is required, so that it is necessary to construct a wharf and dock at least as large as that which is planned. The width of the proposed wharf and also of the proposed dock is just sufficient to accommodate the necessities of the situation. It is alleged and shown that the petitioner does not own any other property equally suitable for this purpose. It owns a somewhat similar strip of property along the easterly edge of Seventeenth avenue vacated, but which is not wide enough for the improvement required, and would be more costly to operate because not adjacent to the present commercial wharf. There would be a distinct operating advantage in having the two commercial wharves adjacent to each other in order that one switching outfit could handle all cars, and dock crews could be employed in other warehouses. The proposed site is suitable for the purpose required, and petitioner already owns all the remainder of the property that is necessary. The proposed improvement is to be used exclusively in the business of the

petitioner as a public carrier and for the public benefit. The petitioner has attempted to purchase the property of relators, but has been unable to do so. .

The first contention of the relators is that a portion of this property is to be used for an excavated waterway, and that there is no statutory authority for condemnation for this purpose. Section 8740, Rem. Code, empowers a railway company to condemn "a sufficient quantity of any such land . . . for yards, terminal, transfer and switching grounds, docks and warehouses required for receiving, delivering, storage and handling of freight . . ." The relators assert that the proposed waterway is not a dock, but that the word "dock" means wharf and nothing else. Dock is defined: (1) An artificial basin for vessels. (2) the space between two adjoining piers or wharves, often roofed over and used as a place of temporary storage, etc. New Standard Dictionary.

"Dock, in marine and river engineering. Vessels require to lie afloat alongside quays provided with suitable appliances in sheltered sites in order to discharge and take in cargoes conveniently and expeditiously; and a basin constructed for this purpose, surrounded by quay walls, is known as a dock." Ency. Brittanica (11th ed.).

It is defined by philologists, according to the American use of the term, as a space between wharves. *Boston v. Lecraw,* 58 U. S. 426. The proposed waterway is, therefore, assuredly a dock and an improvement for which, by the statute, railway companies are authorized to condemn land.

It is further contended that there is no necessity for its condemnation. It is urged that, the statute, Rem. Code, § 925, providing that "the land, real estate, premises, or other property sought to be appropriated are required and necessary for the purposes of such

enterprise;" and it appearing in this case that the petitioner owns other property lying to the west of its present wharf and abutting upon the property of the port commission, with which such party petitioner has an arrangement for the construction of a joint waterway and slip between their adjoining properties, and that all of those properties are suitable for the purposes for which the property of relators is sought to be condemned, the real reason for the attempt to condemn relators' property is that it is merely more convenient for use at present time and under the present conditions; therefore it is not a necessity that exists.

We held in *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670:

"It is true that the petitioner cannot condemn this property in the absence of any necessity therefor. But the word 'necessity,' as used in the statute, 'does not mean an absolute and unconditional necessity, as determined by physical causes, but a reasonable necessity, under the circumstances of the particular case, dependent upon the practicability of another route [here another location], considered in connection with the relative cost to one, and probable injury to the other.' [Citation of cases.] Another learned court states the rule as follows: 'It may be observed generally that 'necessary' in this connection, does not mean absolute or indispensable necessity, but reasonable, requisite, and proper for the accomplishment of the end in view, under the particular circumstances of the case.' *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co., supra* [16 Mont. 504]. 'It is not a question whether there is other land to be had that is equally available, but the question is whether the land sought is needed for the construction of the public work.' *Postal Tel., etc., Co. v. Oregon Short Line R. Co.*, 23 Utah, 474. . . . We think that, upon the facts and circumstances appearing in the case, the petitioner has shown a 'reasonable' necessity for the condemnation of the land it seeks to appropriate."

So, in this case, we think the petitioner has shown a reasonable necessity for the condemnation of the land it seeks to appropriate. It is shown that the commercial business arriving and departing from the port of Seattle has grown to such an enormous extent that greater facilities are required. It is reasonable to suppose that they will increase until still greater facilities will be required, and this the appropriator has the right to anticipate, the same as it had the right to anticipate the necessities of the territory through which it condemned its right of way for its railway. The right to condemn is determined by the right of the public to demand the services so as to make necessary the appropriation sought. *State ex rel. Wilson v. Superior Court,* 47 Wash. 397, 92 Pac. 269. The public has the right to demand adequate and proper facilities for the transshipment of freight from land to ocean carriers with the proper speed and economy. Such is the nature of the improvement contemplated by the petitioner in this case. The adjudication of the necessity by the trial court will not, therefore, be disturbed.

Relators further urge that the petition is insufficient to sustain any condemnation for the reason that there is no precise description of a portion of the property sought to be condemned. There is a controversy between the parties as to what property is really owned by the relators. The statute, Rem. Code, § 921, provides that the petition shall describe the lands, real estate, premises or other property sought to be appropriated, with reasonable certainty. The lots owned by relators are tide land lots. They were purchased by relators as preference rights of upland owners for the purpose, as they assert, of obtaining a continuous strip of land from their upland to the harbor area as defined by the state. The tide lands were platted into lots and blocks, streets and alleys, prior to the time that the

conveyance was made by the state to the relators. And not all the lots are rectangular or even quadrangular. Streets were platted and dedicated, crossing the lots diagonally. Afterwards, by ordinance, the city of Seattle vacated some of these streets, including one diagonal street known as Puget avenue, and another street known as Stevens street, across which relators' lots would extend. Two of relators' lots, fractional lot 8 and fractional lot 9, in block 147, which extended to the inner harbor line and abutted upon Puget avenue, are at an angle with the remainder of relators' lots and do not extend by continuous straight lines to the inner harbor line. Presumably this was thought necessary in platting the lots, in order that the ends of the lots might be perpendicular to the inner harbor line as established. A plat of the lots and streets involved herein is attached hereto, showing the lots owned by Patterson and the vacated portion of streets accruing to the abutting property owners, the vacated portion of streets accruing to Patterson, according to his contention, being marked in stripes, and the vacated portion of Puget avenue accruing to the Pattersons, according to the railway company's amended complaint, being indicated by a double arrow.

The record shows that, upon objections to the petition as originally drawn, which failed to give the particular description of these tracts within the limits of the vacated streets, the court ordered petitioner to amend its petition in this respect. Petitioner made such an amendment and set out by metes and bounds that portion of vacated Puget avenue which it claimed belonged to relators. The portion so described extended across Puget avenue in such a manner as not to connect continuously with the property with which it should join, but was described in such a manner as to leave a jog in the two properties instead of forming a continuous strip for the whole width, leaving the connection across Puget avenue at one point only about twenty feet in width. The relators objected to this description as the part of Puget avenue accruing to them, and sought to have the court declare that the strip was continuous for its full width across Puget avenue. The court, upon hearing the objection, held that the strip as designated by petitioner was correct, but reserved the right to change this ruling upon the trial if the court should conclude that its decision upon this point was erroneous. Thereafter petitioner asked leave, and was granted permission, to withdraw the amended petition and reinstate the petition as originally drawn, which did not attempt to describe in any manner the portion of Puget avenue belonging to relators, except to designate in a general way that it sought to condemn all interests of the relators in the street. As the petition now stands, there is no description of the property owned by relators as a part of vacated Puget avenue, except a general description of all their interests in the vacated portion of that street.

Section 7842, Rem. Code, provides that:

"When any street, alley or public way in any incorporated city or town . . . has heretofore been or

may hereafter be vacated . . . the property within
the limits of any such street, alley or public way so
vacated shall belong to the abutting property owners,
one-half to each, unless within six months after the
taking effect of this act, any person or corporation,
who may feel himself or itself aggrieved by such a
division, may commence an action in the proper courts
of this state to determine the title to any such street,
alley or public way so vacated.''

This was enacted by the legislature in 1901. Relators
contend that, since they were entitled to a continuous
strip from their upland to the inner harbor line, and
that, since the tide lands were platted in such a way as
to make their end lots abutting on the inner harbor line
extend at an angle from their lots in the remainder of
the tide land plat, they are entitled to have the side
lines of the lots extending from the upland extended
across the vacated street to meet the side lines of the
lots which extend at an angle therefrom to the inner
harbor line, and that, in apportioning the land within
the vacated street, the court should take this into con-
sideration and apportion the vacated land in accord-
ance with the original intention of the tide land pur-
chasers.

We are of the opinion, however, that we must take
the statute providing for the reversion of property in
vacated streets as solely controlling in the matter. It
provides that the vacated portion shall belong to the
abutting property owners, one-half to each. Relators
obtained their tide land lots with the streets dedicated
between them and subject to the vacation statute. The
question to be determined then is, Where streets inter-
sect the land platted diagonally and form triangular
shaped lots, how is the vacated portion to be appor-
tioned one-half to each? Undoubtedly somewhere there
will be some land lost which will become ''no man's
land.'' Even if the lines of the lots abutting on the

inner harbor line are diverted at an angle so as to meet, in the center of the street vacated, the extended lines of the other lots in the other blocks, there will be some small tracts of land at the margin of the blocks which it will be impossible to apportion to any one. Moreover, it is to be assumed that, since these lots were platted, they are subject to diverse ownership, and the lots abutting on the inner harbor line and on Puget avenue may all belong to different owners from the lots extending back toward the upland. While the owners of the upland abutting on the tide lands had the preference right to purchase before any one else purchased the tide lands up to the harbor line, nevertheless, if they did not purchase, any one had a right to purchase tide lands from the state, and did so. While these particular tide land owners exercised their preference right and attempted to procure continuous strips of land from their upland to the harbor line, all others may not have done so. All the lots in block 147, except those owned by relators, may be owned by entirely different owners from the tide land lots in blocks 145 and 146. If these were not tide lands, there would be little doubt that we would adopt the rule that the lateral lines of all lots should be extended in straight lines to the center of the street, and that the portion of the vacated street lying between the center line and the ends of their lines should revert to and become their property. Because these are tide lands, we are asked to adopt a different rule and attempt to make a rule which will provide for continuous strips of land from the upland to the harbor line. This we do not feel able to do. We think these lands must be allotted the same portion of the vacated streets that they would be in other platted lands, the lateral lot lines to be extended straight from their former property line to the center line of the vacated street.

This determination will sustain the description as contained in petitioner's amended petition. We are of the opinion that petitioner should be required to describe the lands sought to be appropriated with all the certainty that is possible, in order to determine the land appropriated and condemned by actual survey. It is necessary, also, in order that a jury of condemnation may know how much land is appropriated and to be paid for.

The writ will be granted to the extent of directing the court below to require petitioner to file or refile its amended petition describing the property of relators to be condemned as indicated herein. Relators will recover their costs herein.

ELLIS, C. J., and MOUNT, J., concur.

FULLERTON, J., concurs in the result.