[No. 142-3.    Division Three.    January 25, 1971.]

RUTH ANNETTE THEIS, *Respondent*, v. FEDERAL FINANCE CO.,
INC., *Appellant*.

*Susan F. French* (of *Preston, Thorgrimson, Starin, Ellis
& Holman*), for appellant.

*Kermit M. Rudolf* (of *Dellwo, Rudolf & Grant*), for re-
spondent.

MUNSON, C. J.—Plaintiff, Ruth Annette Theis, seeks damages for: (1) humiliation and embarrassment; (2) loss of use of property; (3) storage charges and other incidental expenses, all of which resulted from defendant's (Federal Finance Co., Inc.) seizure of her household goods during an attempted foreclosure by notice and sale of a forged chattel mortgage; and (4) her subsequent restraint by court order from moving goods from Spokane County or selling them during the pendency of trial. Defendant cross-complained to foreclose the mortgage.

The trial court, sitting without a jury, found in favor of plaintiff, awarding her $5,677.71 ($4,500 for humiliation, embarrassment and mental suffering; $50 for food spoilage; $377.71 for loss of use of separate property and storage charges; and $750 for attorney's fees for procuring the dissolution of the restraining order). Defendant's counterclaim was dismissed with prejudice when it refused to proceed. Federal Finance Co., Inc. appeals only from the award of damages and shall be referred to as if it was the only defendant.

For several years plaintiff's husband, Charles E. Theis, had borrowed money from defendant using the community personal property as security by way of chattel mortgage. In November 1963 plaintiff contacted defendant; she advised it she had other property aside from the community property and that she was not agreeable to her husband's mortgaging any personalty as security for his loans. In December 1963, plaintiff's husband sought additional funds from defendant. He was advised by defendant's agents that before he could obtain additional funds the proposed note and chattel mortgage would have to be signed by both husband and wife. Charles Theis agreed. When the loan application had been completed, Mr. Theis was given the note and mortgage to take home for plaintiff's signature. Mr. Theis, however, without plaintiff's knowledge, signed both his and plaintiff's names to the document. Mr. Theis returned to defendant's office on December 9, 1963 with the signed note and mortgage, which documents provided for a

loan of $1,000, all but $119.52 went to pay off the previous note and service charges. Defendant's assistant manager notarized both the husband's and absent wife's signatures on the chattel mortgage.

Plaintiff and Charles Theis were divorced in December 1964. The bulk of the community property, as well as her separate property, was awarded to plaintiff. There were vast numbers of community debts which Mr. Theis was ordered to pay. The financial instability of this couple before and after the divorce culminated in a foreclosure of the real property mortgage on the community home. The mortgage redemption period expired in July of 1965. The 1963 promissory note was in default on May 19, 1965. Prior to that time plaintiff advised defendant that her signatures on the note and chattel mortgage were forgeries. After default, defendant sought to foreclose the chattel mortgage by notice and sale. Defendant's assistant manager and a deputy sheriff appeared at plaintiff's home on the morning of May 19, 1965 with a large truck. Their express intention was to take all of the household goods covered by the mortgage. Plaintiff informed defendant that not all of the property was community property and that she had acquired some personalty as her separate property but was unable to identify specific items as being separate. During the ensuing conversation, defendant and the sheriff offered to allow plaintiff to become a keeper of the property. Plaintiff refused since she had contemplated leaving the state as soon as the redemption period on the home expired. Defendant then proceeded to remove all of the personalty from the home. Plaintiff called her attorney who came to the home and attempted to discuss the problem with defendant. Later that afternoon, at approximately 5 p.m., defendant's assistant manager was served at the home with a superior court order restraining it from removing any of the personalty from plaintiff's home and transferring the proceedings into that court. At that time not all of the personalty had been removed from the home; that which had been removed was loaded in the truck parked at the

residence. In disregard of the restraining order the balance of the personalty was removed from the home, loaded in the truck and subsequently stored. The following morning defendant offered to return all of the personalty to plaintiff, which offer was refused.

The first issue raised by defendant is the trial court's holding the chattel mortgage was void. All parties agree the wife's signature was forged on the note and mortgage by the husband. Defendant contends that even if the wife's signature was a forgery, the husband as manager of the community assets could encumber the community's personalty. We agree. A chattel mortgage foreclosure, however, is primarily equitable in nature. *Moody v. Noyes,* 15 Wash. 128, 45 P. 732 (1896). Consequently, the maxims of equity are applicable. See 2 Pomeroy, Equity Jurisprudence §§ 397-98 (5th ed. 1941).

Defendant's notarization outside the presence of those whose signatures he is notarizing, which facts are admitted in this case, falls within RCW 9.44.030. Furthermore, defendant required both signatures as a part of their overall offer to loan money to plaintiff's husband. Therefore, it was incumbent upon defendant, having previous notice that the wife would not concur in any further loans, to be sure that her signature was valid. This could best be done by observing her sign the document in their presence or having her testify before a notary that her signature was true. This was not done. As a result, defendant finds itself in a situation to which it in part contributed by violating a criminal statute. Under such circumstances equity will not allow a foreclosure.[1] Defendant still had a right to seek judgment upon the note against the husband and to execute upon the community property in accordance with the usual execution procedures.

Once the matter was transferred to superior court and the restraining order served upon defendant in the after-

---

[1] He who comes into equity must come with "clean hands". *Cf. Malo v. Anderson,* 62 Wn.2d 813, 384 P.2d 867 (1963). See 27 Am. Jur. 2d *Equity* § 143 *et seq.,* at 680-81 (1966).

noon of May 19, 1965, it should have ceased and desisted from further proceedings until the matter could be heard before a judicial tribunal. Hence, while we find the mortgage valid as to the community property, we also find it was unenforceable by notice and sale since the superior court ordered it stopped. The judicial foreclosure was ultimately abandoned by defendant.

■ The second issue defendant raises relates to the trial court's awarding of damages for plaintiff's humiliation and embarrassment as a result of defendant's conduct in the foreclosure. Defendant claims the damages are not compensable. As a general rule defendant's position is well taken. *McGill v. W. P. Fuller & Co.*, 45 Wash. 615, 88 P. 1038 (1907). However, when one by his extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another, he is subject to liability. Restatement (Second) of Torts § 46 (1965); *cf. Browning v. Slenderella Systems*, 54 Wn.2d 440, 341 P.2d 859 (1959). The effect of defendant's conduct upon plaintiff is a factual question upon which we find substantial evidence in the record to support the trial court's conclusion of emotional distress.

■ Defendant next contends that plaintiff had the duty to mitigate her damages either by becoming a keeper of the personalty or at least distinguishing her separate property from the community property. We find no merit in this contention. The principles of equity would preclude the enforcement of the instant mortgage. Defendant's outrageous conduct was either intentional or reckless and under such circumstances there is no obligation upon the injured party to mitigate her damages in the manner urged. See *Desimone v. Mutual Materials Co.*, 23 Wn.2d 876, 162 P.2d 808 (1945).

■ The award of attorney's fees to plaintiff for procuring the dissolution of an injunction restraining her from removing the goods from Spokane County or selling them prior to trial was proper since the order, issued upon notice

and hearing, was wrong from its inception.[2] See *Puget Sound Harbor No. 16 of American Ass'n of Masters & Pilots of Steam Vessels v. Aetna Accident & Liab. Co.*, 97 Wash. 413, 166 P. 785 (1917); 2 High, Injunctions ¶ 1685 (4th ed. 1905).

██ Defendant finally takes issue with the court's allowance of damages for food spoilage, loss of use of property, and storage charges. With reference to the measure of damages in such an instance *McGill v. W. P. Fuller & Co., supra,* at 617 states:

> The measure of damages for the wrongful taking or detention of personal property is the reasonable value of the use of the property during the period of detention, and damages for injury to the property, if any.

The trial court was not in error.

Judgment affirmed.

GREEN and EVANS, JJ., concur.

---

[2]We have held the foreclosure attempt to be unenforceable in equity; also, defendant did not relieve plaintiff of this burden after it refused to proceed with the foreclosure action.