[No. 327-1.    Division One—Panel 1.    April 5, 1971.]

MICHELSON BROS., INC., *et al., Appellants,* v. IRVING BADER-MAN *et al., Respondents.*

*Newton & Newton* and *R. Michael Kight,* for appellants.

*Maslan & Hanan, Ben A. Maslan, Wolfstone, Panchot & Bloch,* and *Dudley Panchot,* for respondents.

UTTER, J.—On July 30, 1965, the City of Seattle vacated a portion of South Holgate Street, which is located on first class tidelands. The portion of the street vacated is depicted on the diagram as lying within points A, D, H, and K. The parties to this appeal are the owners of the lots on block 320 which directly abut the vacated property. Appellants Michelson Bros., Inc., Moe Michelson, and Jerome Michelson own lot 8, respondents Irving Baderman and his wife own lot 6, and respondent Sam Michelson owns lot 7. Prior to the vacation, each of the parties made use of the area lying directly east of their respective properties for storage and easterly access to Occidental Avenue. The roughly square area lying within points A, G, H, and K was used by the City of Seattle as a storage area for streetcar rails and paving bricks.

When the street was vacated, appellants instituted this action to quiet title against the respondents and the City of Seattle. The respondents answered and cross-complained, contending they, too, had an interest in the vacated street. Prior to the trial, the State of Washington's motion to intervene was granted. During the trial, the city quitclaimed any interest it might have in the vacated street to the parties now before this court. The claim of the State of Washington was dismissed with prejudice by the trial court, and the state has not joined in this appeal.

The trial court divided the vacated street so each abutting owner received an amount approximately proportionate to the length of his abutment. The area within points C, D, H, and I was added to lot 6. The area within points B, C, I, and J was added to lot 7. The area within points A, B, J, and K was added to lot 8. Appellants, owners of lot 8, contend their preferential right to the vacated street requires the straight extension of the southern boundary of lot 6 from C to E and the southern boundary of lot 7 from B to F, thereby allotting the area within points C, D, and E to lot 6; the area within points B, C, E, and F to lot 7; and, the area within points A, B, F, H, and K to lot 8. Respon-

BLOCK 334

BLOCK 320

BLOCK 319

N

1st AVE. SO.

OCCIDENTAL AVE.

SO. HOLGATE STREET

dents contend the trial court's distribution should be affirmed.

Quiet title proceedings are addressed to the equity jurisdiction of the court. *Mouat v. Seattle Lake Shore & E. Ry.*, 16 Wash. 84, 47 P. 233 (1896). The equitable

nature of the proceedings allows us to base our decision on equitable principles which have been set down in short statements or maxims. *Cascade Timber Co. v. Northern Pac. Ry.*, 28 Wn.2d 684, 711, 184 P.2d 90 (1947); *Theis v. Federal Fin. Co.*, 4 Wn. App. 146, 480 P.2d 244 (1971); 2 J. Pomeroy, A Treatise on Equity Jurisprudence § 360 (5th ed. 1941). The maxim most relevant to this case is "equality is equity." This principle requires the court to distribute benefits equally between claimants with equal rights of participation. *State ex rel. Nat'l Bank of Commerce v. Stacy*, 198 Wash. 708, 90 P.2d 264 (1939); 2 J. Pomeroy, A Treatise on Equity Jurisprudence § 406 (5th ed. 1941). The court of equity presumes equality, and the burden is placed upon the party claiming a preferential right to establish it. *Frederick Iron & Steel Co. v. Page*, 165 Md. 212, 166 A. 738, 741 (1933). We hold the trial court divided the vacated property as equally and fairly as possible and that appellants have failed to establish a preferential right.

Appellants contend the trial court's distribution of the vacated street is unjust and inequitable. They also maintain this court may not apply the above described equitable principle because *State ex rel. Patterson v. Superior Court*, 102 Wash. 331, 173 P. 186 (1918) establishes the parties to this appeal do not enjoy equal rights of participation in the vacated street.

Appellants argue the trial court's division of the property is unjust because it denies them access to Occidental Avenue, which they enjoyed for 35 years prior to the vacation of South Holgate Street. However, any detriment suffered by the appellants by virtue of this division is balanced by their receipt of the share of the vacated street most readily capable of effective utilization. The trial court allotted the largest share of the street to the appellants, as well as a corner location. Also, the appellants' loss of access to Occidental Avenue is shared by the respondent Michelson, owner of lot 7. The rough equality reached by the trial court is the most fair and equitable division possible under the circumstances of this case.

Appellants further contend *Patterson* establishes their preferential right in the vacated property by requiring the straight extension of the lateral lot lines to Occidental Avenue. That case involved the vacation of Puget Avenue, shown on the diagram as running diagonally across the tidelands. Prior to vacation, the relator purchased lots 1 and 2 from the state through an exercise of his right as an

upland owner to purchase tidelands, in order to maintain a continuous access to the harbor. These lots were platted in slightly different directions, so that the straight extension of their lateral boundaries to the center of the street, from A to B, from C to D, from E to G, and from F to H, resulted in the very narrow connection shown. The relator sought to have the court extend the lines diagonally across the street, from A to E and from C to F, and thereby maintain a continuous harbor connection. The court held the lateral boundaries should be extended straight to the center of the vacated street, from A to B, from C to D, from E to G, and from F to H, thereby allotting to each abutting lot the same portion of the vacated street as it would receive in a normally platted area.

■■ The transfer of tideland property by the state includes its interest in the streets upon which the property abuts. *Wyckoff v. Seattle*, 60 Wn.2d 100, 371 P.2d 935 (1962); *Bussell v. Ross*, 64 Wash. 418, 116 P. 1088 (1911). Since platted property is subject to diverse ownership, the interest in the street received by the purchaser extends only to the center of the street, for the length of the abutment, subject to public easement of passage. When a street is vacated, the abutting owners continue to hold their fee to the center of the vacated street, but the fee is unencumbered by this public easement. *Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle*, 70 Wn.2d 222, 422 P.2d 799 (1967); RCW 35.79.040. Our court has held, however, the application of this rule to be dependent upon the "particular circumstances" of each case. *Rowe v. James*, 71 Wash. 267, 128 P. 539 (1912).

■ We do not accept appellants' contention that *Patterson* controls the "particular circumstances" of this case. The court, in *Patterson*, 102 Wash. at 340, declared they

> must take the statute providing for the reversion of property in vacated streets [now RCW 35.79.040] as solely controlling in the matter. It provides that the vacated portion shall belong to the abutting property owners, one-half to each.

This statute, which was "solely controlling" in *Patterson,* is not even applicable to this case. Here, there are abutting owners on only one side of the property in dispute, and there is no center line to which the lateral lot lines may be extended. Under these particular circumstances, where only part of a street is vacated, the owners abutting the vacated portion are entitled to its entirety. *Raleigh-Hayward Co. v. Hull,* 167 Wash. 39, 8 P.2d 988 (1932).

Application of the *Patterson* rule to this case would establish the area within points A, H, G, and K as a "no man's land." In *Patterson* the court could not avoid the creation of "small tracts of land at the margin of the blocks which . . . [would] be impossible to apportion to any one [*sic*]." Appellants contend that since the extension of the lateral boundary lines to Occidental Avenue will cut off the rights of the respondents, they are the sole abutting owners of the area within points A, H, G, and K, and therefore must be awarded the property. However, the alternative solution, adopted by the trial court and supported by the respondents, apportions all of the vacated property fairly and equitably, thereby obviating the problems inherent with the creation of property incapable of apportionment.

In addition, the dispute in *Patterson* dealt mainly with the maintenance of the relator's continuous harbor access, there being no dispute regarding the amount of property to be allotted to each abutting owner. If the court had adopted Patterson's argument and extended the lateral boundaries diagonally, he would still have received the same amount of property, by virtue of the court's decision.

Appellants have failed to establish a preferential right to the vacated portion of South Holgate Street. The property must be apportioned between the three abutting owners as equally and as fairly as possible, and we believe the trial court's method best accomplishes this result. The judgment is affirmed.

HOROWITZ, C.J., and WILLIAMS, J., concur.